## No. 26961

## The People of the State of Colorado v. Larry Larson

(572 P.2d 815)

Decided December 12, 1977.                    Rehearing denied January 16, 1978.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Edward G. Donovan, Solicitor General, Joseph M. Goldhammer, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Carol L. Gerstl, Deputy, for defendant-appellant.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

Two men robbed a Denver pawnshop at gunpoint on November 10, 1973. When they fled, they were followed by a witness to the robbery who saw them run to a car in a nearby restaurant parking lot. The witness testified that the two robbers ran to the car occupied by the appellant and his wife and said something like, "Let's get out of here." The appellant then backed up the car, the two robbers got in, and the appellant drove off. The police were notified and located the get-away car traveling at a high rate of speed.

Following a high-speed chase, the car driven by the appellant was stopped by a police officer. When ordered by the officer to get out of the car, the appellant's right hand was at the base of the driver's seat where a pistol was later found. Subsequent investigation revealed that the car driven by the appellant bore stolen license plates.

Trial to a jury resulted in the appellant's conviction for aggravated robbery,[1] conspiracy to commit aggravated robbery,[2] and for being an habitual criminal.[3] The court imposed concurrent sentences of forty to forty-five years in the Colorado State Penitentiary. On appeal, the appellant raises numerous grounds for reversal, none of which we find persuasive.

### I.

The appellant initially contends that the evidence was insufficient to support his convictions and that the court, therefore, erred in denying his

---

[1] 1971 Perm. Supp., C.R.S. 1963, 40-4-302, now section 18-4-302, C.R.S. 1973.
[2] 1971 Perm. Supp., C.R.S. 1963, 40-2-201, now section 18-2-201, C.R.S. 1973.
[3] C.R.S. 1963, 39-13-1, now section 16-13-101, C.R.S. 1973.

motion for judgment of acquittal. He asserts that his convictions under the complicity theory were not supported by evidence that (1) he had knowledge that the principals intended to commit the crime, or that (2) he aided, abetted, or advised the principals with the specific intent to assist them in the commission of the crime.

The appellant's theory of the case was that he had been forced to serve as the robbers' get-away driver. His wife testified that she and the appellant had been parked at the restaurant, discussing what to eat, when the two men approached, produced a gun, and forced the appellant to drive them away. She also testified that she did not know the two men and that the car they were in had been borrowed.

A police officer who had interviewed the appellant's wife related a somewhat different version of the occurrence. He testified that the appellant's wife told him that two friends had come running by in need of a ride. On redirect examination, the wife denied having made the statements attributed to her by the police officer.

When the sufficiency of the evidence is challenged on appeal, this court reviews the evidence in the light most favorable to the prosecution and will not set aside a verdict because a different conclusion might be drawn from all the evidence. *People v. Marques*, 184 Colo. 262, 520 P.2d 113 (1974); *People v. Vigil*, 180 Colo. 104, 502 P.2d 418 (1972). It is our task to determine whether a jury could reasonably conclude that the appellant's guilt as to each element of the offense had been proven beyond a reasonable doubt. *People v. Marques, supra*; *People v. Bennett*, 183 Colo. 125, 515 P.2d 466 (1973).

Under the complicity theory, the prosecution must prove that (1) the principal committed the crime, (2) the complicitor had knowledge that the principal intended to commit the crime, and (3) having this knowledge, the complicitor did, in fact, aid or encourage, with the specific intent to so aid or encourage, the principal in the commission of the crime. *People v. Martin*, 192 Colo. 491, 561 P.2d 776 (1977); *People v. Marques, supra*. When two or more persons are involved in the commission of a criminal offense, and one helps the other, it is not necessary that each perform all the acts necessary to the crime for each to be charged as principals. *People v. Stephens*, 188 Colo. 8, 532 P.2d 728 (1975); *Reed v. People*, 171 Colo. 421, 467 P.2d 809 (1970).

Reviewing the evidence in the light most favorable to the prosecution, the jury verdict is supported by substantial evidence that: (1) the two robbers ran directly to the appellant's car, which was parked nearby, (2) the appellant responded immediately to the robbers' plea and sped away, and (3) the car driven by the appellant was equipped with stolen license plates.

The jury obviously chose not to believe the appellant's theory of the case and, by its guilty verdict, indicated acceptance of the

prosecution's theory of the case and the evidence offered in support thereof. It is axiomatic that a jury verdict may be supported by circumstantial as well as by direct evidence. *People v. Marques, supra*; *People v. Bennett, supra.*

█ The appellant further contends that the evidence was insufficient to support his conviction for conspiracy to commit aggravated robbery. This argument fails for the same reasons that his earlier argument failed. A jury can properly infer the existence of the agreement or the assent necessary to establish a conspiracy from circumstantial as well as direct evidence. Direct evidence of the agreement is rarely available. *Reed v. People, supra*; *Abeyta v. People*, 156 Colo. 440, 400 P.2d 431 (1965). Furthermore, evidence which supports a conviction for the substantive offense may be utilized by the jury in reaching a verdict on the conspiracy charge. *Robles v. People*, 160 Colo. 297, 417 P.2d 232 (1966).

## II.

An additional argument advanced by the appellant for reversal relates to jury instruction number 18. The instruction to the jury was:

"If you find from the evidence beyond a reasonable doubt, that the crime charged in the information was committed by some person, and that immediately after such crime was committed the defendant fled, such flight would be a circumstance, not sufficient in itself to establish the guilt of the defendant, but a circumstance which you may consider, in connection with all the other facts and circumstances proven at the trial, in determining the question of the guilt or innocence of the defendant. It is for you to determine from the evidence whether such flight was caused by a consciousness of guilt or by some other innocent motive."

The appellant argues that the flight instruction was inappropriate because he did not commit the robbery.

█ We have expressed our disfavor with the flight instruction because it gives undue influence to one item of evidence. *People v. Miller*, 187 Colo. 239, 529 P.2d 648 (1974); *People v. Morant*, 179 Colo. 287, 499 P.2d 1173 (1972). However, the giving of the instruction does not constitute reversible error if "the defendant had reason to believe that he had committed a crime, that his identity was known, that his pursuit and apprehension would probably ensue, and that he concealed himself for any length of time to frustrate this apprehension." *Robinson v. People*, 114 Colo. 381, 165 P.2d 763 (1946).

█ The evidence supported, and the jury obviously believed, the prosecution's theory that the appellant had conspired and participated in the commission of the aggravated robbery. The jury reasonably could have inferred that the appellant was fleeing with the other occupants of the car to avoid arrest. We find that the test set forth in *Robinson v. People, supra*, is satisfied in this case. Although the flight instruction should be sparingly given, its use in this case did not constitute reversible error.

### III.

The appellant finally contends that the habitual criminal statute, C.R.S. 1963, 39-13-1, violates his constitutional rights to the equal protection of the laws and freedom from cruel and unusual punishment guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution.

The United States Supreme Court and the Colorado Supreme Court have consistently upheld the constitutionality of habitual criminal statutes. The equal protection, due process, and cruel and unusual punishment provisions of the United States Constitution are not breached by the Colorado habitual criminal statute. *Spencer v. Texas*, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed. 2d 606 (1967); *Oyler v. Boles*, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962); *People v. Renfrow*, 193 Colo. 131, 564 P.2d 411 (1977); *People v. Bergstrom*, 190 Colo. 105, 544 P.2d 396 (1975); *People v. Thomas*, 189 Colo. 490, 542 P.2d 387 (1975); *Vigil v. People*, 137 Colo. 161, 322 P.2d 320 (1958). These well-reasoned decisions are dispositive of appellant's arguments.

### A. Equal Protection

The appellant first contends that his right to equal protection of the law is violated by the application of the habitual criminal statute because of the manner in which it has been administered. To buttress his argument, the appellant has appended to his brief a statistical study prepared by the Bureau of Classification and Records of the Colorado State Penitentiary which indicates that less than one percent of the inmates who were eligible for prosecution and sentencing under the habitual criminal statute have actually been sentenced under its provisions. The appellant concludes that this evidence of discretionary application of a statute, mandatory on its face, by district attorneys acting without adequate standards, violates equal protection guarantees. We disagree. We rejected these exact arguments in *People v. Thomas, supra.* In that case, we relied upon *Oyler v. Boles, supra*, and said:

"As in *Oyler*, this defendant fails to prove that statistical selectivity in enforcement violates his constitutional rights. As he admits, and as the statistician expressly states in his study, the proffered statistics do not show how many of the men had been originally charged with a habitual count but had not been sentenced through plea negotiation or failure of proof. Furthermore, the study fails to indicate why a prosecutor might have decided not to bring habitual charges against those persons who had been convicted of prior felonies. Ignorance of the prior felonies, difficulties of proof, and considerations of whether the prior convictions could be collaterally attacked are all legitimate factors that could have influenced a prosecutor's decision. In conclusion, the data does not substantiate completely arbitrary or discriminatory enforcement *based on invidious classifications.* Based on the *Oyler* rationale, the defendant's constitu-

tional challenge to the recidivist charge on grounds of equal protection cannot therefore be upheld." (Emphasis added.)

We also discussed and rejected the argument, based upon *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), that infrequency of use is evidence of a constitutional infirmity:

"*Absent invidious discrimination based upon factors such as race, religion, or other arbitrary classification,* the alleged infrequent or selective use of the recidivist statute cannot be reaonably challenged by a proven habitual offender who was on notice of its possible use. The increased punishment under the statute is not arbitrary because it can only be imposed after the proof of the additional facts of prior convictions." (Emphasis added.)

Similar arguments have been recently rejected by the Washington Supreme Court. In *State v. Lee*, 87 Wash.2d 932, 558 P.2d 236 (1976), the Washington habitual criminal statute, also mandatory on its face, was held to merely vest the prosecution with the power to charge a person with the status of being an habitual criminal. The court found that "implicit within the statute is a reasonable standard to govern the prosecuting attorney's exercise of discretion to initiate proceedings. The decision to prosecute must be based on the prosecutor's ability to meet the proof required by the statute."

Since the appellant has failed to demonstrate arbitrary or discriminatory application of the habitual criminal statute based upon an invidious classification, equal protection of the law has not been denied.

### B. Cruel and Unusual Punishment

The appellant's second constitutional challenge rests upon his assertion that the sentence imposed upon him is excessive and disproportionate to the offenses charged and constitutes cruel and unusual punishment. The validity of the principle underlying this argument is, of course, well established. In *Weems v. United States*, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910), the United States Supreme Court noted that punishment in a state prison for a long term of years might be so disproportionate to the offense as to constitute cruel and unusual punishment. This argument, however, is unpersuasive in the context of the habitual criminal statute as applied in this case.

If a sentence is imposed within the statutory limits and does not shock the conscience of the court, it will not be disturbed on Eighth Amendment grounds. *People v. Thomas, supra; People v. Fulmer,* 185 Colo. 366, 524 P.2d 606 (1974). The repetition of criminal conduct justifies a greater penalty for the crime charged. *State v. Lee, supra; see also People v. Bergstrom, supra.*

The appellant's two prior felony convictions were for assault with a deadly weapon and conspiracy to commit burglary. The underlying offenses in this case are aggravated robbery and conspiracy to commit

aggravated robbery. Both crimes are class three felonies carrying sentences of from five to forty years' imprisonment. The appellant was sentenced for these crimes under the habitual criminal statute to a term of from forty to forty-five years' imprisonment. The sentences imposed on the appellant for the underlying crimes were neither excessive nor disproportionate when considered under the facts and in the context of the habitual criminal statute.[4]

The remaining assignments of error are devoid of merit and do not warrant discussion.

Accordingly, the judgment is affirmed.

MR. JUSTICE CARRIGAN does not participate.

---

[4]The appellant relies upon *Hart v. Coiner*, 483 F.2d 136 (4th Cir. 1973), *cert. denied*, 415 U.S. 938, 94 S.Ct. 1454, 39 L.Ed.2d 495 (1974), in which the court held that a life sentence under an habitual criminal statute for perjury was disproportionate to the underlying offense and, therefore, in violation of the Eighth Amendment to the United States Constitution. *Hart v. Coiner* represents the extreme minority view which we reject.