The **PEOPLE** of the State of Colorado, Plaintiff–Appellee and Cross–Appellant,

v.

Larry **MERSHON**, Defendant–Appellant and Cross–Appellee.

No. 90CA2030.

Colorado Court of Appeals, Div. II.

July 16, 1992.

Rehearing Denied Aug. 13, 1992.

Certiorari Granted Feb. 8, 1993.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., A. William Bonner, Asst. Atty. Gen., Gordon Denison, Deputy Dist. Atty., Denver, for plaintiff-appellee and cross-appellant.

David F. Vela, State Public Defender, Patrick J. Mulligan, Deputy State Public Defender, Denver, for defendant-appellant and cross-appellee.

Opinion by Judge PLANK.

The defendant, Larry Mershon, appeals judgments of conviction entered upon jury verdicts finding him guilty of distribution and possession of a controlled drug and conspiracy to distribute a controlled substance. The People cross-appeal the trial court's order entered after a proportionality review of the defendant's habitual criminal conviction reducing the defendant's sentence from life to thirty-five years. We affirm.

The defendant was arrested and charged following six heroin sales to an undercover police officer. The information also alleged that the defendant conspired with another person in the possession and distribution of heroin. In addition, habitual

criminal charges were filed based on six prior felony convictions.

When arrested, the defendant was given a proper *Miranda* warning. He subsequently waived his rights and admitted to the undercover officer that he was the person who had sold heroin to him on six occasions.

The jury returned guilty verdicts on all counts except one drug transaction count. The jury then found the defendant to be a habitual criminal and the court entered a life sentence. After a proportionality hearing, the trial court reduced the life sentence to thirty-five years.

## I.

■ The defendant first contends the trial court erred in denying the defendant's motion for specific performance of his plea agreement. We agree with the trial court's treatment of this issue.

Shortly after the defendant's arrest, the prosecution presented a written plea offer to the defendant. Under its proposal, the prosecution agreed to drop all remaining charges in exchange for defendant's plea of guilty to one count of distribution of heroin and his acceptance of a stipulated sentence of twenty years. The proposed agreement contained the following paragraph:

> This offer will be revoked on the date set for the preliminary hearing or, if waived, 30 days prior to trial if we have not reached an agreement. In addition, the offer may be withdrawn at any time additional evidence or information becomes available which would make the above disposition inappropriate.

The defendant's preliminary hearing was set for three days after the presentment of the plea offer. The defendant waived his preliminary hearing and tendered pleas of not guilty. The defendant was free on bond at the time the plea offer was made, and his trial was set for June 11, 1990.

The defendant failed to appear for trial. A bench warrant was issued, and defendant was later arrested and returned to court two weeks after the June trial date. His trial was reset for September 4, 1990.

On August 2, 1990, the defendant attempted to accept the prosecution's plea offer. At a hearing before the court, the prosecution asserted that its offer, by its terms, had expired May 11, 1990, that being thirty days before the original trial date.

The trial court found the offer had expired as the prosecution contended. It also noted that the language in the agreement allowing withdrawal of the offer upon additional evidence would also have permitted the prosecution to revoke the agreement when the defendant failed to appear on his initial trial date.

■ A plea agreement is a contract, and the terms are interpreted in light of the reasonable expectations of the parties. In making such a determination, the court may consider the form and content of any written agreement containing the government's promise, and, if that writing is ambiguous, it may also consider extrinsic evidence of the government's dealing with the defendant. *People v. Romero*, 745 P.2d 1003 (Colo.1987).

■ A court's task is not to rewrite the agreement but to construe it in a manner that is consistent with the intent of the parties and the defendant's right to be treated fairly by the government. *People v. Romero, supra.* A promise by the government cannot be withdrawn if the defendant has reasonably and detrimentally relied thereon. *People v. Manning*, 672 P.2d 499 (Colo.1983).

Here, the written plea agreement stated that, if defendant waived his preliminary hearing, then the offer would be revoked thirty days before trial. Thus, defendant's waiver of his preliminary hearing was relevant to the calculation of the period during which the offer was to remain open. And, since the offer was not accepted by defendant before May 11, 1990, thirty days before his scheduled trial, it was revoked on that date, irrespective of subsequent events.

Under these circumstances, we find no error in the trial court's denial of enforcement of the plea agreement.

## II.

■ The defendant next contends that the trial court erred in prohibiting his collateral attack on his prior convictions. We disagree.

The prosecution filed six habitual criminal counts against the defendant, alleging convictions as follows:

Count 11: April 11, 1977, possession of dangerous drugs.

Count 12: April 1, 1977, robbery.

Count 13: April 1, 1983, possession of more than an ounce of marijuana (later dismissed by the trial court).

Count 14: April 8, 1983, criminal mischief.

Count 15: April 8, 1985, attempted distribution of marijuana.

Count 16: April 1, 1987, theft.

In response to defendant's motion to suppress these prior convictions, the trial court, after a hearing, ruled that he was barred from attacking any of his convictions by § 16–5–402, C.R.S. (1978 Repl.Vol. 8A) and the grace period of *People v. Fagerholm*, 768 P.2d 689 (Colo.1989). The court also found that the defendant had not shown justifiable excuse or excusable neglect for his failure to attack these convictions within the applicable time limits.

Defendant asserts that he had no present need to attack these convictions while the five-year *Fagerholm* grace period was running. Hence, he argues that his lack of present need establishes a justifiable excuse or excusable neglect for failing to attack his convictions within the limitation period as set forth in § 16–5–402(1), C.R.S. (1987 Repl.Vol. 8A), and by *Fagerholm.*

Section 16–5–402(1) provides a three-year limitation period during which a defendant can collaterally attack a prior conviction. And, *People v. Fagerholm, supra,* provided for a five-year grace period for such a collateral attack after enactment of § 16–5–402 on July 1, 1984.

The statute and the *Fagerholm* deadline created the defendant's present need; it was not when habitual criminal charges were filed. *See People v. Stephens*, 837 P.2d 231 (Colo.App.1992). Accordingly, here, the defendant had until July 1, 1989, to attack counts 11, 12, and 14 or be forever barred. The three-year period of § 16–5–402 governs count 15 and 16.

Section 16–5–102(2), C.R.S. (1987 Repl. Vol. 8A) provides:

In recognition of the difficulties attending the litigation of stale claims and the potential for frustrating various statutory provisions directed at repeat offenders, former offenders, and habitual offenders, the only exceptions to the time limitations specified in subsection (1) of this section shall be:

. . . . .

(d) Where the court hearing the collateral attack finds that the failure to seek relief within the applicable time period was the result of circumstances amounting to justifiable excuse or excusable neglect.

■ Excusable neglect is defined as a circumstance or circumstances which would cause a reasonably careful person to neglect a legal duty. If there has been a failure to take proper steps at the proper time, not as a consequence of carelessness, but instead as a result of some unavoidable hindrance or occurrence, only then does excusable neglect exist. *People v. Fultz*, 761 P.2d 242 (Colo.App.1988).

■ Whether excusable neglect exists is a matter for determination in the discretion of the trial court, but excusable neglect has been found only in "extraordinary circumstances." *People v. Fultz, supra.*

Here, defendant presents no factual circumstances which would constitute excusable neglect. Defendant's argument that he has no present need to collaterally attack his previous convictions until habitual criminal charges were filed is without merit. Hence, we find no error in the trial court's denial of his collateral attack of his prior felony convictions.

## III.

■ Defendant next contends that the trial court erred in refusing his tendered jury instructions on entrapment. We disagree.

The standard instruction on entrapment, *COLJI–Crim.* No. 7:10 (1990 Supp.), was given to the jury by the court. Instructions were also given on the elements of distribution of heroin, possession of heroin, and conspiracy. Further, the jury was instructed on the prosecution's burden of proving guilt beyond a reasonable doubt as to all elements of the offense and to the affirmative defense. The trial court refused defendant's six proposed instructions because they were repetitive of other instructions that were given.

■ The defendant has a right to present a defense and a right to have the jury accurately instructed on that defense. *See People v. Freeman*, 668 P.2d 1371 (Colo. 1983). This requires that his theory be embodied in the instructions given by the court and not that the jury be instructed on the defendant's theory in the particular language tendered by the defendant. *Edwards v. People*, 160 Colo. 395, 418 P.2d 174 (1966). Thus, it is not error for the trial court to reject the defendant's theory of the case instruction when it is encompassed in the other instructions given by the court.

■ In determining whether the jury has been adequately informed of the defendant's theory, all the instructions given must be considered together as a whole. *People v. Tippett*, 733 P.2d 1183 (Colo. 1987); *People v. White*, 632 P.2d 609 (Colo. App.1981). Also to be considered is whether counsel's closing argument fairly and adequately presented defendant's theory to the jury. *See People v. Flanders*, 183 Colo. 268, 516 P.2d 418 (1973); *see also People v. Goetz*, 41 Colo.App. 60, 582 P.2d 698 (1978).

Upon review of the record, we conclude that defendant's affirmative defense of entrapment was accurately and correctly set forth in the instructions given the court. In closing argument, defendant strongly argued that he was not guilty of any of the substantive charges because he was entrapped by the conduct of the police officer and informant. The instructions properly instructed the jury on the burden of proof for all the elements of the crime as well as the affirmative defense.

Accordingly, we find no error in the trial court's refusal of defendant's instructions on entrapment.

## IV.

The defendant next contends that the trial court erred in instructing the jury on the theory of complicity. We disagree.

The trial court gave the following instruction on complicity:

A person is guilty of an offense committed by another person if he is a complicator [sic]. To be guilty as a complicator [sic], the following must be established beyond a reasonable doubt:

1. A crime must have been committed.
2. Another person must have committed all or part of the crime.
3. The defendant must have had knowledge that the other person intended to commit all or part of the crime.
4. The defendant did intentionally aid, abet, advise, or encourage the other person in the commission or planning of the crime.

*See COLJI–Crim.* No. 6:04 (1983).

Defendant contends that because the instruction contained the phrases "all or part of the crime" and "aid, abet, advise, or encourage," he was unconstitutionally deprived of his right to due process and the right to have the prosecution prove every element of the crime beyond a reasonable doubt.

At trial, defendant did not object to this instruction, nor did he raise an objection to the inclusion of the phrases that he now protests on appeal, and thus, reversal is warranted only if the instruction constituted plain error. *See People v. Cowden*, 735 P.2d 199 (Colo.1987); Crim.P. 52(b).

■ In the context of instructional error, plain error does not occur unless a

review of the entire record demonstrates that the error so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *See People v. Hampton*, 746 P.2d 947 (Colo.1987).

### A.

■■■ Defendant claims that the instruction erroneously allowed him to be found guilty as a principal even if he committed only part of the crime. We perceive no error in this regard.

■■■■■ A person charged as an accessory may be charged as a principal. *Fernandez v. People*, 176 Colo. 346, 490 P.2d 690 (1971). One charged as a principal may be tried and convicted as a complicitor as the acts of a principal are the acts of a complicitor. *See People v. Mason*, 642 P.2d 8 (Colo.1982).

■■■ Thus, it is not necessary that each party perform all the acts necessary to the crime for each or either to be charged and convicted as a principal. *People v. Larson*, 194 Colo. 338, 572 P.2d 815 (1977). It is only necessary that each party intentionally aided the other in the commission of the crime and that the acts of both the principal and the accessory, together, constitute all acts necessary to complete the offense. *See People v. Larson, supra.*

Here, the evidence shows that, on two occasions, defendant's accomplice assisted the defendant in selling heroin to the undercover officer. It is irrelevant that the jury could find that neither defendant nor his accomplice performed all the acts necessary to charge either as the principal. *See People v. Larson, supra.* Each man performed part of the crime and the actions of each man helped the other. *See People v. Larson, supra; People v. Stephens, supra.*

### B.

■■■ The defendant next argues that the portion of the complicity instruction phrased in the disjunctive (*i.e.,* "aid, abet, advise, *or* encourage") allowed the jury to convict him as a complicitor for passive involvement or tacit approval of the conduct, rather than only for conduct which actively promoted the criminal activity. Again, we disagree.

The record shows that, on two occasions, defendant did more than give tacit approval to the sale of heroin to the undercover officer. In each sale, defendant personally handed the heroin to the officer. With the first sale, defendant accepted the money and delivered the drugs. During the next sale, defendant gave the drugs to the officer only after his accomplice had counted the money. Thus, defendant's claim is unsupported by the record.

Accordingly, giving the complicity instruction does not constitute plain error.

### V.

■■■ The defendant lastly contends the trial court erred in admitting evidence of his prior felony convictions because he had not "opened the door" to evidence of prior criminality. We disagree.

After the prosecution had rested its case, defendant called his first witness who testified that he had known the defendant for about thirteen years and that they had worked on several construction jobs together. The witness stated that he had never talked to defendant about drugs and that the defendant had never attempted to sell him any drugs.

Near the end of this direct examination, the following colloquy occurred:

[By defense counsel]: In October 1989, in your opinion, did Mr. Mershon have any predisposition to selling narcotic drugs?

[Answer by witness]: No, sir. He was too much involved up in the work he was doing ... to have his mind on anything else. He did quite a bit of extensive work there. I couldn't see how he could be involved [in selling drugs]. His mind couldn't be in two places at once....

Q: In your opinion as his friend, ... do you have any opinion as to whether or not he would sell drugs?

A: It was totally out of character for him. I can't even fathom, I can't con-

ceive of that at all.... No, sir, I can't see that.

Thereafter, the jury was excused, after which the prosecution argued that the witness' testimony opened the door to questions on cross-examination concerning whether the witness knew of the following: (1) defendant's prior felony convictions; (2) defendant's three prior drug-related felony convictions; and (3) defendant's past arrests for drug sales.

After hearing defendant's argument on the prosecution's impeachment request, the court ruled that defendant's questions opened the door to evidence concerning defendant's prior convictions for either possession or distribution of drugs. The court specifically allowed the prosecutor to ask the witness whether his opinion took into consideration the defendant's drug related convictions. The court refused to allow any inquiry into defendant's drug-related arrests or his convictions which were not drug-related.

On cross-examination, the witness stated that in the period he had known the defendant, he had never known him to "willfully go out and sell drugs on the street." The witness was then asked whether he "was aware" of defendant's conviction for dispensing dangerous drugs in 1977, defendant's conviction for attempted distribution of marijuana in 1983, and his conviction for possession of marijuana in 1985. The witness replied that he was not aware of any of these convictions.

Here, the trial court correctly ruled that defendant opened the door to these inquiries. See People v. Tenorio, 197 Colo. 137, 590 P.2d 952 (1979) (defense counsel's question to arresting officer whether his gun was drawn when officer approached defendant opened the door to officer's statements on redirect examination that his gun was drawn because defendant was purported to be armed); Heinze v. People, 127 Colo. 54, 253 P.2d 596 (1953) (defendant who testifies about previous arrests as evidence of his claim of persecution by police opened the door to cross-examination into defendant's prior arrests and convictions).

See also People v. Haymaker, 716 P.2d 110 (Colo.1986).

Defendant, however, claims that the prosecutor's questions placed his character at issue without him having previously raised that issue. However, the questions to the witness concerning defendant's propensity to sell drugs, together with the witness' response that such activity was "out of character" for the defendant, necessarily put defendant's character at issue.

Following the cross-examination of the witness, the trial court instructed the jury that the evidence of defendant's "alleged" prior felony convictions was admitted only as those convictions "might bear upon the opinions expressed by the witness concerning [the defendant] and for no other purpose." The jury was then expressly instructed that defendant's convictions "may not be considered as evidence of the defendant's guilt or innocence of the offenses which are charged here. He is being tried for the offenses charged and no others." The court then stated that these convictions were admitted "for the limited purpose of assessing the witness' opinions and for that purpose only."

Absent a contrary showing, jurors are presumed to have heeded, understood, and followed their instructions. See People v. Moody, 676 P.2d 691 (Colo.1984). Accordingly, we find no error in the trial court's ruling to allow questioning of this witness on the defendant's prior drug-related felony convictions.

## VI.

The People, on cross-appeal, contend that the trial court erred in its reduction of the defendant's life sentence as an habitual criminal. We disagree.

### A.

▆▆ At the proportionality hearing, the People requested an abbreviated review and the trial court agreed. The People presented evidence comparing the defendant's habitual criminal charges with twelve other criminals who received life sentences for conviction as habitual crimi-

nals in the court's judicial district during the past decade.

In conducting its review, the court considered the defendant's five underlying felony convictions committed over ten years. These convictions included possession of marijuana with intent to distribute, class 4 robbery, class 5 felony attempted criminal mischief, class 5 felony attempted distribution of marijuana, and class 4 theft.

The court also considered defendant's life expectancy and his eligibility for parole. It noted that the defendant, who was thirty-six years old when he received the life sentence, would be eligible for parole in forty years. He had a life expectancy of 40.7 years at the time of his sentence. Section 13–25–103, C.R.S. (1987 Repl.Vol. 6A). Thus, for all practical purposes the defendant would not be eligible for parole.

In comparing the defendant's present and prior convictions with the twelve of the other habitual criminal convictions, the court found that the other habitual criminal convictions involved one or more violent crimes while the defendant had no convictions that involved violence or a deadly weapon.

With all these considerations in mind, the court concluded that the defendant's life sentence was significantly disproportionate to his crimes and violated the Eighth Amendment.

In *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), the Court held that a criminal sentence must be proportionate to the crime for which the defendant has been convicted. The Court also held that a court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including: 1) the gravity of the offense and the harshness of the penalty; 2) the sentences imposed on other criminals in the same jurisdiction; and 3) the sentences imposed for commission of the same crime in other jurisdictions.

▰▰▰ The prosecution urges that defendant's prior convictions must be considered as comparable to those of the other habitual criminals that had received a life sen-

tence. However, the determination of whether crimes are grave or serious, in an habitual criminal conviction, is somewhat imprecise. *People v. Gaskins,* 825 P.2d 30 (Colo.1992) *cert. denied,* ⎯⎯ U.S. ⎯⎯, 112 S.Ct. 3015, 120 L.Ed.2d 888 (1992). Here, the trial court observed that offenses can be compared "in light of the harm caused or threatened to the victim or society, and the culpability of the offender." *People v. Gaskins, supra,* (quoting *Solem v. Helm, supra* ). And, in assessing the harm caused or threatened to society, relevant considerations include whether the crime involves violence, and the absolute magnitude of the crime. *People v. Gaskins, supra.* Hence, we perceive no error in the trial court's conclusion that defendant's offenses were less serious than crimes involving violence.

▰▰▰ In its ruling the court considered the gravity of the defendant's offense and the harshness of the penalty. It also utilized the evidence presented by the People of the other life sentences of habitual criminals, all of which involved convictions for violent crime. And, it properly allowed defendant to testify. *See People v. Austin,* 799 P.2d 408 (Colo.App.1990).

Thus, the review conducted here meets the criteria of *Solem,* and we perceive no abuse of discretion in the court's conclusion that, as to defendant, the imposition of a life sentence was unconstitutional.

▰▰▰ The People also assert that the trial court erred in reducing the sentence to thirty-five years. Again, we perceive no error.

Sentencing is, by its nature, discretionary, and the trial court is a better arbiter of facts than an appellate court because of its greater familiarity with the defendant and the circumstances of the case. Hence, a trial court's sentencing decision will not be disturbed absent clear abuse of discretion. *People v. Watkins,* 684 P.2d 234 (Colo. 1984).

▰▰▰ If the sentence is within the range required by law, is based on appropriate considerations as reflected in the record, and is factually supported by the circum-

stances of the case, an appellate court must uphold the sentence. *People v. Fuller*, 791 P.2d 702 (Colo.1990).

Upon review of the record, we find evidence to support the trial court's ruling. Hence, we find no abuse of discretion in the trial court's reduction of the defendant's life sentence to thirty-five years.

Accordingly, the judgment and sentence are affirmed.

SMITH and TURSI, JJ., concur.