The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Larry D. LUCAS, Defendant–Appellant.

No. 98CA0129.

Colorado Court of Appeals,
Div. I.

March 4, 1999

As Modified on Denial of Rehearing
June 24, 1999.

Certiorari Denied Feb. 14, 2000.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Kathleen M. Byrne, Special Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

The Tannous Law Firm, K. John Tannous, Trinidad, Colorado, for Defendant–Appellant.

Opinion by Judge CASEBOLT.

Defendant, Larry D. Lucas, appeals the judgment of conviction entered upon a jury verdict finding him guilty of first degree murder (felony murder) and robbery. We affirm the conviction and remand for correction of the mittimus.

While the El Paso County Department of Social Services (Department) had legal and physical custody of him, defendant, who was sixteen, ran away from a group home in Colorado Springs. Some three months thereafter, he and a group of friends began hitchhiking with the stated goal of leaving Colorado.

After traveling for three days, the group obtained a ride from the victim. Before entering his vehicle, the group agreed that they would "jump" the victim and take his car. After the victim stopped the car, the group did so. During the ensuing scuffle, two members of defendant's group held the victim's head underwater while strangling him, resulting in the victim's death. During the assault, defendant took the victim's jewelry and keys, and the group then left the scene in the victim's vehicle.

Less than two weeks later, defendant was arrested in Nevada. After he made incriminating statements in two separate interrogations by the police, he was extradited to Colorado where he was convicted of the above crimes as an adult. This appeal followed.

## I.

Defendant first contends that, because he was sixteen and not emancipated at the time he gave his incriminating statements and neither his parent, custodian, nor guardian was present during the questioning, the trial court erred in refusing to suppress his statements. Specifically, he asserts that, since the Department had legal and physical custody of him, a guardian *ad litem* had been appointed for him, and his mother had not given real or apparent assent to his independence, the trial court erred in finding that he was emancipated. We reject these contentions.

### A.

In general, a statement given by a juvenile during custodial interrogation is not admissible unless a parent, guardian, or legal custodian is also present at the time of the interrogation. Section 19–2–511(1), C.R.S. 1998; *Nicholas v. People*, 973 P.2d 1213 (Colo.1999); *People in Interest of M.R.J.*, 633 P.2d 474 (Colo.1981). However, if a juvenile is emancipated from the parent, guardian, or legal or physical custodian, statements made without such an adult being present are admissible. Section 19–2–511(2), C.R.S.1998.

Section 19–1–103(45), C.R.S.1998 (in effect here as Colo. Sess. Laws 1996, ch. 19, § 19–1–103(45)) states, in pertinent part:

> An 'emancipated juvenile' ... means a juvenile over fifteen years of age and under eighteen years of age who has, with the real or apparent assent of his parents, demonstrated his independence from his parents in matters of care, custody, and earnings. The term may include, but is not limited to, any such juvenile who has the sole responsibility for his own support.

Whether emancipation has been established must be determined with reference to the specific facts and circumstances of each case. Thus, the trial court's findings concerning a juvenile's emancipation will be

upheld if there is evidence in the record to support them. *See Napolitano v. Napolitano*, 732 P.2d 245 (Colo.App.1986); *Poudre Valley Hospital District v. Heckart*, 491 P.2d 984 (Colo.App.1971) (not selected for official publication).

■ Here, defendant's father was deceased. The trial court found that defendant was totally on his own for three months without any financial, emotional, spiritual, or physical assistance from his mother or his guardian. It found that his mother had absolved herself of any meaningful relationship with her son, and concluded that defendant was emancipated at the time of the interrogations.

There is record support for these findings. In April 1996, defendant's mother had filed a police report alleging that defendant had stolen her husband's car. Thereafter, defendant was adjudicated a delinquent, and his legal and physical custody was given to the Department pursuant to a court order. Defendant was subsequently placed in a group home for juveniles run by the Department.

On July 20, 1996, defendant left the group home without permission and was considered absent without leave. Between July 20 and October 12, 1996, the date of his arrest, defendant did not voluntarily return to the group home. He was involuntarily returned there for one night in August before fleeing again.

While living on his own for approximately three months, defendant did not receive any financial support from his mother or his legal custodian.

In October 1996, when the police contacted defendant's mother regarding the incident involved in this case, she informed them that she had no idea where her son was and that he had not contacted her. She apparently had seen him once in a parking lot, but when she tried to approach him, he fled.

During an interview with the police after his arrest, a police officer had asked the defendant if he wanted his mother to be notified. Defendant told the officer, "No, I'll take care of it." Also in one of the police interviews, defendant had indicated to police that he did not know his mother's telephone number because it had been changed since he left.

Thus, the evidence supports the court's determination that defendant was emancipated to the extent he was independent from his mother in matters of care, custody, and earnings.

## B.

Defendant nevertheless asserts that his mother did not give her assent to his independence. We disagree.

Even though defendant's mother testified that she had not given her assent to defendant living on his own, the statute specifies that a parent's assent can be real *or* apparent. Implicit in the trial court's findings and conclusions is a determination that the consent of defendant's mother was apparent. The record supports this conclusion.

For the same reasons, we conclude that defendant was emancipated from his guardian and legal and physical custodian. *See* § 19–2–511(2), C.R.S.1998.

## C.

■ Defendant, however, contends that, regardless of the above-described circumstances, he could not be emancipated, as a matter of law, because legal and physical custody of him had been given to the Department. We disagree.

As to this issue, we are unaware of any authority directly on point; however, we do note that § 19–2–511(2), C.R.S.1998, specifically states that if the juvenile "is emancipated from the parent, *guardian, or legal or physical custodian,*" the juvenile's statements to police are admissible (emphasis added). Thus, the language of the statute implicitly recognizes that a juvenile may be emancipated from the custody of someone other than a parent, and that pronouncement, in our view, includes the state. *See* § 19–1–115, C.R.S.1998 (state agency or institution may be legal custodian or guardian).

We are aware that arts. IV and V of the Interstate Compact on Juveniles, § 24–60–702, C.R.S 1998, which provide for the return

of runaway juveniles, might be read to support defendant's contention. Under art. IV of the Compact, when a juvenile, who has not been adjudicated delinquent, runs away without the consent of the parent, guardian, person, or agency entitled to legal custody, such custodian may petition for the issuance of a requisition for the return of the juvenile, but must allege facts in the petition to show that the juvenile is not an emancipated minor. However, under art. V, when a runaway juvenile has been previously adjudicated delinquent, the custodian need say nothing in the petition concerning emancipation. Arguably, therefore, a delinquent juvenile cannot be emancipated.

We reject this interpretation. In our view, the difference turns not on emancipation, but jurisdiction. A custodian and a demanding state would have no interest, jurisdictional basis, or nexus to petition for return of a non-delinquent juvenile who is emancipated. A fully emancipated juvenile would be entitled to exercise all rights of adulthood and, absent involvement in the juvenile or criminal justice system, would not need to account to a former custodian or state concerning his or her whereabouts or well-being.

In contrast, however, there would be a proper basis to seek return of a delinquent juvenile, because the custodian and the state have an interest in, and jurisdiction for, satisfaction of the legal terms and conditions imposed because of the delinquency. Whether such a juvenile was emancipated would be irrelevant to whether he or she could be returned to face the consequences of the delinquent acts in this state. *See* § 19-2-102, C.R.S.1998 (jurisdiction of the juvenile court may continue until all orders have been complied with or the juvenile reaches the age of twenty-one, whichever first occurs).

Moreover, to prohibit the use of inculpatory statements of a delinquent juvenile who is emancipated in fact, because he or she is a ward of the state and therefore could not be emancipated as a matter of law, while admitting statements of juveniles who were also emancipated but not delinquent, seems anomalous at best.

Accordingly, the trial court did not err in concluding that defendant was emancipated,

and thus, his inculpatory statements were admissible.

## II.

Defendant also contends his statements should have been suppressed because he was under the influence of alcohol and/or drugs when interviewed. We disagree.

Confessions, admissions, and statements are not admissible for any purpose unless they are made voluntarily. Whether statements obtained during a custodial interrogation are voluntary depends upon the totality of the circumstances surrounding the interrogation. Primary factors to be considered are: (1) the juvenile's age, experience, background, and intelligence; (2) his or her capacity to understand the warnings given and the nature of his or her Fifth Amendment rights and the consequences of waiving those rights. *People in Interest of M.R.J.*, 633 P.2d 474 (Colo.1981).

The trial court's factual findings concerning the voluntariness of a confession are entitled to deference on appeal and will be upheld if there is adequate evidence in the record to support them. *People v. Breidenbach*, 875 P.2d 879 (Colo.1994).

Here, defendant was questioned by police officers twice. The first interview occurred within an hour of his arrest and the second was two days later. On both occasions, defendant was advised of his *Miranda* rights, indicated he understood those rights, and nevertheless agreed to talk with the officers.

At the time of his arrest, defendant was sixteen years old, could read and write in English, had completed the tenth grade, and had had prior contacts with police.

At the suppression hearing, defendant testified that, on the day of his arrest, he had been drinking and using drugs, and that he was not merely sleeping when police arrested him, but had passed out. He also testified that he had no recollection of either police interview.

In contrast, the officer who conducted the first interview testified that the defendant did not smell of alcohol and did not appear to

be under the influence of alcohol or drugs. He and another officer also testified that defendant was fully aware of his surroundings and the purpose for which the interviews were being held, and gave coherent answers to their questions.

Based on the officers' testimony and a review of the transcripts from the interviews, the trial court found that defendant was not under the influence of alcohol and/or drugs at the time of the interviews. Thus, his statements were voluntarily given, and not the result of undue influence or coercion on the part of the officers.

The evidence in the record fully supports the trial court's determination. Moreover, even if we were to assume that defendant had used alcohol and drugs on the day of his arrest and was incapable of understanding the implications of his statements during the first interview, such cannot be said of the statements given during the second interview, which took place two days later.

It is undisputed that defendant was incarcerated between interviews. Thus, any impairment caused by alcohol or drugs on the date of his arrest presumably would not have been present during the second interview. Further, during the second interview, defendant specifically denied being under the influence of alcohol or drugs.

Accordingly, we reject defendant's contention.

## III.

■ Defendant next contends that the trial court erred by admitting evidence of a burglary he and his friends had committed three days before the commission of the crimes charged here. We disagree.

■ The trial court has substantial discretion in deciding questions concerning the admissibility of evidence, and absent an abuse of discretion, its evidentiary rulings will be affirmed. *People v. Lowe,* 660 P.2d 1261 (Colo.1983).

■ Evidence of a defendant's prior criminal acts is inadmissible to prove that a defendant committed the crime for which he or she is charged. CRE 404(b). However, evidence of other offenses or acts that are part and parcel of the criminal episode is admissible as *res gestae* of the offense. *People v. Quintana,* 882 P.2d 1366 (Colo.1994).

■ *Res gestae* evidence provides the fact-finder with a full and complete understanding of the events surrounding the crime and the context in which the charged crime occurred, and includes events closely related in both time and nature to the charged offense. *Res gestae* evidence is not subject to the general rule of CRE 404(b) that excludes evidence of prior criminality, and thus, such evidence can be admitted without a limiting instruction. *People v. Quintana, supra.*

Here, it is uncontroverted that defendant and his friends, via hitchhiking and walking, traveled from Colorado Springs to Trinidad. Before reaching Trinidad, the group broke into a house in Walsenburg and stole a number of items, including a laptop computer that they then sold to finance their trip.

The trial court admitted the evidence of the burglary over defendant's objection. We conclude that the evidence was admissible as *res gestae* evidence.

The challenged evidence explains the setting in which the homicide occurred. It demonstrates that defendant and his friends had left Colorado Springs on a long journey with no means of support, with little money, and no vehicle. They began to commit crimes in order to provide for themselves. It was in this context that defendant's group encountered, robbed, and killed the victim.

Moreover, the evidence was relevant and its probative value was not substantially outweighed by the danger of unfair prejudice. Thus, the evidence was part of the *res gestae* of the charged crimes. *See People v. Czemerynski,* 786 P.2d 1100 (Colo.1990).

## IV.

■ Defendant next asserts that the trial court erred in excluding the testimony of a psychiatrist concerning the state of mind of one of the participants in the crime. We disagree.

Defendant sought to introduce the evidence to show that his friend was enraged at

the time of the murder because of confusion over his sexual identity. There was other evidence that the male victim and this male participant had engaged in a sexual encounter just before the murder. The trial court excluded the psychiatrist's testimony.

Even if we assume, as defendant argues, that the trial court's reason for exclusion was incorrect, we find no reversible error. The proffered evidence was irrelevant under CRE 402. *See People v. Quintana, supra* (an appellate court will affirm if the trial court reached the correct result).

Relevant evidence is evidence tending to make the existence of any fact that is of consequence to the determination of an action more or less probable than it would be without the evidence. CRE 401.

Here, defendant was charged with felony murder, with robbery as the underlying felony. Such charge would be sustained by proof that defendant knowingly took something of value from the victim by the use of force, threats, or intimidation, and, in the course of the commission of that act, the victim died. *See* § 18–3–102(1)(b), C.R.S. 1998; *People v. Hickam,* 684 P.2d 228 (Colo. 1984).

The uncontroverted evidence established that, during the beating that caused the victim's death, defendant took the victim's ring and car keys. Thus, we fail to see how evidence of the participant's state of mind has any bearing on whether defendant committed the robbery and thus was guilty of felony murder. The participant's state of mind was of no consequence to the determination of the issues here. Therefore, we find no error in the trial court's decision to exclude the testimony of the psychiatrist.

## V.

Defendant also contends that his conviction must be reversed because the trial court rejected two of his tendered jury instructions. We disagree.

### A.

■ We first reject defendant's contention that the trial court should have instruct-

ed the jury on the affirmative defense to felony murder of disengagement from the underlying offense.

■ An instruction embodying the defendant's theory of the case must be given if there is any credible evidence to support it, regardless of how improbable. *Lybarger v. People,* 807 P.2d 570 (Colo.1991). However, the trial court initially determines whether there is a total absence of evidence to support a defendant's theory. Consequently, it is not error for a trial court to reject a defendant's proposed affirmative defense instruction if it is not grounded in, and supported by, the evidence. *People v. Dooley,* 944 P.2d 590 (Colo.App.1997).

Section 18–3–102(2), C.R.S.1998, sets forth six elements upon which a defendant must present evidence to warrant an affirmative defense instruction concerning disengagement from the crime. The statute lists each element in the conjunctive. Thus, there must be some evidence as to each element of the affirmative defense.

Here, defendant failed to present evidence sufficient to meet at least one of those elements, and thus, his claim fails. The uncontroverted evidence at trial indicated that defendant knew of and consented to a plan to "jump" the victim. Further, it was uncontroverted that defendant was not merely a bystander to the attack, but punched the victim several times during the group assault.

Because he participated in the attack on the victim and personally hit the victim multiple times, the defendant engaged in conduct likely to cause serious bodily injury. Thus, the uncontroverted evidence negates the existence of non-engagement under § 18–3–102(2)(e), C.R.S.1998. Therefore, defendant was not entitled to an affirmative defense instruction.

### B.

■ Next, we reject defendant's claim that the court erred when it refused to instruct the jury on the lesser non-included offense of assault.

■ A court has no duty to instruct the jury on the elements of a lesser non-included offense unless there exists a rational basis in the evidence to acquit the defendant on the greater charge and convict him or her on the

lesser charge. *People v. Skinner*, 825 P.2d 1045 (Colo.App.1991).

Here, defendant was charged with robbery and first degree murder, and requested that the trial court instruct the jury on the lesser non-included offense of assault, contending that he had committed the assault, but had not committed a robbery.

At trial, the investigating officers who questioned defendant testified that he had told them that while the group was beating the victim, he took the victim's ring and the keys to the victim's car. Further, at the time of his arrest, defendant was in possession of the victim's ring.

Because the evidence establishing defendant's guilt as to the robbery charge was uncontroverted, there was no rational basis for the jury to acquit defendant of the robbery charge and still convict him of assault. Therefore, defendant was not entitled to an instruction on the lesser non-included offense of assault. *See Graham v. People*, 199 Colo. 439, 610 P.2d 494 (1980) (defendant was not entitled to instruction on theft because defendant's own admission established that he had committed robbery).

## VI.

█ Finally, we note that the mittimus reflects defendant's conviction for both first degree murder and robbery. However, under *People v. Bartowsheski*, 661 P.2d 235 (Colo.1983), when a defendant's conviction for felony murder is predicated upon his killing of the robbery victim, a simultaneous conviction for robbery is precluded. Thus, we must remand for a correction of the mittimus to reflect only defendant's conviction for first degree murder.

The judgment of conviction is affirmed, and the cause is remanded for correction of the mittimus.

Judge METZGER and Judge TAUBMAN concur.