The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

John H. COOK, Defendant–Appellant.

No. 98CA1078.

Colorado Court of Appeals,
Div. II.

Aug. 31, 2000.

Rehearing Denied Oct. 12, 2000.

Certiorari Denied April 23, 2001.*

---

\* Justice BENDER would grant as to the following issues:

Whether (a) the trial court abused its discretion in declining to poll the jury, and (b) it was error for the court of appeals to hold that the invited error doctrine prevented the defendant from raising that issue on appeal.

If a trial judge expresses an opinion about the defendant's guilt during or resulting from the co-defendant's proceedings, should he or she be disqualified from presiding over defendant's trial.

Ken Salazar, Attorney General, Nancy Bauer Egelhoff, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Nancy L. Flax, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

Defendant, John Henry Cook, appeals the judgment of conviction entered on a jury verdict finding him guilty of felony murder, robbery, and being a habitual criminal. We affirm defendant's felony murder conviction, vacate the robbery and habitual criminal convictions, and remand for correction of the mittimus.

In January 1998, while defendant and the co-defendant were visiting defendant's son in Woodland Park, Colorado, defendant called a massage therapist (victim) to his son's trailer home and agreed to exchange his handyman skills for a massage. The victim was later found strangled in her car.

The day after the victim's death, defendant helped his son purchase a truck, borrowed some money from an acquaintance of his son, and with his co-defendant left for Las Vegas, Nevada. The next day the police arrested defendant and the co-defendant outside a hotel in Mesquite, Nevada.

Prior to defendant's trial, the co-defendant pled guilty to robbery, conspiracy to commit robbery, and second degree murder. Defendant's trial resulted in the convictions at issue here.

### I. Newspaper Article

■ Defendant contends the trial court erred in failing to follow the appropriate procedure to determine whether a defendant has been prejudiced by juror exposure to extraneous information during trial. Defendant argues that a newspaper article published in a local paper during the trial was prejudicial because it may have revealed information to the jurors about defendant that the trial court had ruled inadmissible. Therefore, defendant urges, the trial court erred in refusing to question jurors as to whether they had seen the article. We perceive no reversible error.

■ In making a determination as to whether a defendant has been prejudiced by juror exposure to extraneous information from the media, the trial court must: (1) determine whether the media coverage has a potential for unfair prejudice; (2) canvass the jury to ascertain whether jurors have been exposed to the potentially prejudicial publicity; and (3) examine exposed jurors individually to ascertain how much they know of the publicity and what effect, if any, it has had on the juror's ability to decide the case fairly. *Harper v. People*, 817 P.2d 77 (Colo.1991).

■ On appeal, a party may defend a trial court's judgment on any ground supported by the record, regardless of whether that ground was relied upon or even contemplated by the trial court. *People v. Eppens*, 979 P.2d 14 (Colo.1999).

Here, the article contained statements by the prosecutor regarding incidents in which defendant, while in New York City, attempted to "troll for victims" by calling women service providers and asking them to make house calls. Defendant brought the article to the court's attention, and requested that the court ask jurors whether they had seen it. The court denied the request, concluding that there was no evidence that the jurors had ignored its instructions to avoid local newspaper and television accounts of the trial.

The court nevertheless offered to instruct the jurors at subsequent trial recesses that they must be extra vigilant and not read articles about the case in the local papers. Defendant's attorney told the trial court that such an instruction would be "fine."

Because defendant informed the court that the supplemental cautionary instruction to the jury would be sufficient, he cannot now complain about any error that may have resulted from the trial court's failure to determine whether the article was prejudicial

or to poll the jurors as to whether they had seen it. *See People v. Collins,* 730 P.2d 293, 304–05 (Colo.1986) (defendant may not complain where he has been "instrument for injecting error into the case").

## II. Recusal

■ Defendant next contends the trial judge erred in not recusing himself after making prejudicial comments about defendant during the co-defendant's sentencing. We disagree.

■ A defendant may seek recusal of a trial judge if the motion and required affidavits contain facts from which a reasonable person may infer that the judge has a bias or prejudice toward the defendant that will in all probability prevent him or her from dealing fairly with the defendant. *People v. District Court,* 898 P.2d 1058 (Colo.1995).

■ A motion for recusal must include affidavits of at least two credible persons not related to the defendant. Crim. P. 21(b)(1). The affidavits must state facts requiring recusal; mere conclusions are insufficient. *Walker v. People,* 126 Colo. 135, 248 P.2d 287 (1952).

■ The trial court must accept as true the facts stated in the motion and affidavits. *People v. Botham,* 629 P.2d 589 (Colo.1981).

■ A trial court's conclusion regarding the legal sufficiency of the motion and affidavits is subject to independent review on appeal. *Smith v. District Court,* 629 P.2d 1055 (Colo.1981).

In support of his recusal motion, defendant attached two affidavits from attorneys in Colorado Springs. Defendant contends that these affidavits alone were sufficient to require recusal. He also argues that even if this court disregards the conclusions in the affidavits, the facts cited by the affiants were sufficient to require recusal. We disagree with both contentions.

The affiants cited as facts the following statements made by the trial court during the co-defendant's sentencing, which occurred two weeks before defendant's trial.

I agree with [the prosecutor] this was in the nature of some sort of a premeditated robbery murder scheme put together here involving a completely innocent victim who was lured to the scene with no chance of ever surviving the circumstances that had been planned for her in her fate.

I'm not gonna make some factual finding here that Mr. Cook himself is solely responsible for what happened here, and that if he hadn't been around with you [the co-defendant], that you wouldn't of [sic] done any of this, or that you did everything simply because he told you to do it. There's certainly evidence that indicate [sic] that he may have had some inducement role in all of this, but you certainly, for the crimes that you've pled guilty to that you've said that you have committed, have established your own role in the murder of [the victim] and her robbery....

Based on the comments, the affiants concluded that the court was biased and should have recused itself.

Although the trial court was required to consider as true the facts set forth in the affidavits, it was not bound by the attorneys' conclusions that recusal was required. *See Walker v. People, supra.* Therefore, we must determine whether the factual allegations were sufficient to require recusal.

The above-cited statements were made while the trial court was explaining the mitigating factors that it could consider in sentencing the co-defendant. Defendant argues that the comments show that, before his trial began, the trial court had already concluded he was guilty of the crimes charged.

Based on our review of the transcript of the co-defendant's sentencing hearing, we conclude that the comments made by the trial court did not amount to a prejudgment by the trial court as to defendant's guilt.

In addition, we conclude that the cases defendant relies on to support his argument are distinguishable.

One case cited by defendant, *In re George G.,* 64 Md.App. 70, 494 A.2d 247 (1985), involved six defendants on trial for rape. Prior to the defendant's trial, the trial judge had presided over the trials of three other co-

defendants. Based on these prior adjudications, the defendant requested that the judge recuse himself. During the hearing on the defendant's recusal motion, the judge stated to the defendant's attorney: "You might be able to prove that he is innocent." The judge then refused to recuse himself. In reversing the defendant's conviction, the Maryland Court of Appeals concluded that the judge's statement gave the appearance of bias, and therefore required recusal.

Similarly, in *People v. Gibson*, 90 Mich. App. 792, 282 N.W.2d 483 (1979), also cited by defendant, the court held that recusal is required where the judge "expresses a preconceived notion as to defendant's guilt or innocence" and concluded that recusal *sua sponte* was required by the trial judge's remark during the first trial of two co-defendants. At that trial, the trial judge stated: "There is no question in the Court's mind that this was done by [the co-defendant] and [defendant], his companion, this assault with intent to steal from [the victim] his monies or other things of value that they found in the vicinity." *People v. Gibson, supra*, 282 N.W.2d at 485.

■ We agree with defendant that a trial court judge presiding over the separate trials of two co-defendants may not make a statement expressing bias or prejudice about the second co-defendant during the earlier trial or sentencing of the first co-defendant. However, where, as here, the trial court's statements merely consist of comments about a second co-defendant as part of the consideration of mitigating factors during the sentencing of the first co-defendant, recusal is not required. *Cf. Comiskey v. District Court*, 926 P.2d 539 (Colo.1996) (information judge learns in performance of his or her judicial duties is generally not sufficient grounds for disqualification).

We perceive no bias or prejudice towards defendant in the judge's remarks. Indeed, the court here expressly declined to find that: (1) defendant was solely responsible for the murder and robbery that had occurred, or (2) the co-defendant committed the crimes to which he pled guilty merely because the defendant "told him to do it."

Although the trial court stated that it believed the co-defendant had been induced into committing the crime, such was an appropriate consideration as a mitigating factor in sentencing the co-defendant. *See* § 16–11–103(4), C.R.S.1999. Moreover, because the trial court specifically refused at the co-defendant's sentencing hearing to speculate as to defendant's role in the crimes charged, and because the statements, when considered in context, did not show bias or prejudice, we conclude that the court's remarks did not amount to a prejudgment of defendant's guilt. *See State v. D'Ambrosio*, 67 Ohio St.3d 185, 616 N.E.2d 909 (1993) (when a trial judge had observed the testimony of a co-defendant at another co-defendant's trial, and did not express an opinion regarding the testimony, he was not required to recuse himself from the defendant's trial).

Accordingly, the trial judge did not err in refusing to recuse himself.

### III. Other Transaction Evidence

■ Defendant asserts the trial court abused its discretion in admitting evidence of other transactions because such evidence was dependent upon an inference of defendant's bad character. We are not persuaded.

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity with that character. However, such evidence is admissible for other purposes, such as to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. CRE 404(b).

■ In addition, evidence of prior acts is admissible if it: (1) relates to a material fact; (2) has a tendency to make the existence of the material fact more or less probable; (3) is relevant independent of the inference that the defendant has a bad character and acted in conformity with that character in committing the crime; and (4) has probative value that is not substantially outweighed by the danger of unfair prejudice. *People v. Spoto*, 795 P.2d 1314 (Colo.1990).

■ A trial court has substantial discretion in determining the admissibility of prior

acts evidence, and such determination will not be disturbed on appeal absent an abuse of such discretion. *People v. Groves*, 854 P.2d 1310 (Colo.App.1992).

Here, the trial court admitted the following evidence of prior acts of defendant. First, while in New York, a friend of defendant arranged for a woman real estate agent to show him a cabin. When the agent arrived at the cabin, defendant met her there, strangled her, and robbed her. Second, also while in New York, defendant made two phone calls to service providers and falsely identified himself. One call was to a massage therapist. Defendant falsely stated that he was a Vietnam war veteran and asked the woman to come to his home to give him a massage. The other call was to a baby sitter when he had no need for one. Both women declined defendant's requests.

The court determined that this evidence was relevant to prove intent, identity, motive, preparation or plan, and *modus operandi*. The court also instructed the jury that the evidence was to be used solely for those purposes.

Although this evidence may have led to an inference of bad character, it had relevance independent of that inference. Thus, we agree with the trial court's treatment of this evidence.

## IV. Flight Instruction

■ Defendant next asserts the trial court erred in submitting to the jury a flight instruction. We disagree.

■ Flight instructions are not favored because they put undue emphasis on only one portion of the evidence. *People v. Larson*, 194 Colo. 338, 572 P.2d 815 (1977). However, it is not reversible error to give such an instruction where the "defendant had reason to believe that he had committed a crime, that his identity was known, that his pursuit and apprehension would probably ensue, and that he fled or concealed himself for any length of time to frustrate his apprehension." *People v. Larson, supra*, 194 Colo. at 342, 572 P.2d at 817.

■ A flight instruction may be given even if the defendant's flight was not imme-diate. *People v. Fletcher*, 193 Colo. 314, 566 P.2d 345 (1977).

■ The propriety of a flight instruction depends on the facts of each case. *People v. Fletcher, supra*.

According to the evidence, defendant spent the day after the murder with his son and daughter-in-law helping his son buy a truck and borrowing money from an acquaintance of his son. Later that day defendant took the newly purchased truck to travel with the co-defendant to Nevada.

Defendant asserts that the flight instruction was inappropriate here because he had previously planned to go to Nevada and used his real name when checking into the hotel and helping his son purchase a truck. Defendant argues that this evidence showed he was not attempting to avoid detection. We disagree.

In addition to this evidence, there also was evidence that defendant had reason to believe he had committed a crime, including evidence that: (1) the victim had not returned home; (2) defendant had called the victim to his son's trailer shortly before she had died; and (3) defendant's semen was found on a sheet the victim had used for the massage.

There was also evidence that defendant had reason to know the police knew his identity because he had left his name and phone number on the victim's answering machine.

Furthermore, there was evidence that the police would pursue and attempt to apprehend defendant because defendant's son had told him the victim's husband had called asking if defendant knew the victim or had seen her. In response, defendant told his son he would "take care of it."

Finally, there was evidence that defendant fled from the hotel room in Nevada in order to avoid apprehension.

Under these circumstances, there was sufficient evidence to support a flight instruction, and it was therefore not reversible error for the trial court to so instruct the jury.

## V. Robbery and Habitual Criminal Convictions

Defendant contends the trial court erred in entering separate convictions for robbery and felony murder.. Specifically, he argues that his conviction for robbery merges into the felony murder conviction, and therefore, he cannot be convicted of both. Defendant also argues that the habitual criminal convictions should be vacated because they were considered only in enhancing his sentence for robbery. We agree with defendant that the robbery conviction must be vacated. Because the habitual criminal convictions relate only to the robbery sentence, they must be vacated as well.

### A.

A defendant may not be convicted of both felony murder and the underlying felony. Section 18–1–408(1)(a), C.R.S.1999; *People v. Lucas,* 992 P.2d 619 (Colo.App.1999)(when a defendant's conviction for felony murder is predicated on the death of a robbery victim, a simultaneous conviction for robbery is precluded).

Here, the trial court sentenced defendant to life in prison without possibility of parole for the felony murder conviction, and a concurrent twenty-four year sentence to the Department of Corrections for robbery as a habitual criminal.

Defendant argues, the People concede, and we agree, that the robbery conviction merges into the felony murder conviction and therefore must be vacated. *See People v. Lucas, supra.*

### B.

Defendant further argues that because the trial court's sentence for felony murder was not based on the habitual criminal convictions and because the robbery conviction must be vacated, the habitual criminal convictions must be vacated as well. We agree.

The record reveals that when the trial court sentenced defendant to life imprisonment without possibility of parole for felony murder pursuant to § 18–1–105(4), C.R.S. 1999, it did so without regard to the habitual criminal convictions. When it sentenced defendant for robbery, it imposed a 24–year sentence because of the habitual criminal convictions. Therefore, insofar as the habitual criminal convictions relate only to the sentence for robbery, the trial court must vacate those convictions.

The People do not contend that the habitual criminal convictions apply to defendant's felony murder conviction. Accordingly, we do not address whether under § 16–13–101, C.R.S.1999, a defendant's adjudication as a habitual criminal could enhance the sentence for a class 1 felony, such as felony murder. *See* § 16–13–101(2), C.R.S.1999 (a defendant convicted of a felony and adjudged a habitual criminal based on three prior felony convictions shall be sentenced to a term four times the maximum in the presumptive range); § 18–1–105(1)(a)(V)(A), C.R.S.1999 (the maximum sentence in the presumptive range for robbery is six years); § 18–1–105(4), C.R.S. 1999 (for class 1 felonies, life imprisonment means imprisonment without the possibility of parole).

### C.

Based on this disposition, defendant's contention that the trial court erred in denying his request to challenge two prior convictions on constitutional grounds is moot. *See People v. Abdul,* 935 P.2d 4 (Colo.1997) (generally a case is moot when a judgment would have no practical effect upon an existing controversy).

### D.

■ Without citing authority, the People argue that although we may vacate the robbery and habitual criminal convictions, the mittimus should not be corrected until all Crim. P. 35 motions and federal habeas corpus actions have been resolved. The reported appellate cases support a different result. *See generally People v. Lucas, supra* (where conviction of an underlying felony merges into felony murder, the court must remand for correction of the mittimus to reflect only defendant's conviction for murder). In addition, because felony murder is a class 1 felony, there is no time limitation for defendant to file Crim. P. 35 motions, and consequently,

the mittimus would remain uncorrected indefinitely under the People's approach.

The judgment of conviction for felony murder is affirmed, the robbery and habitual criminal convictions are vacated, and the cause is remanded for correction of the mittimus to reflect only defendant's conviction for felony murder.

Judge PLANK and Judge NIETO concur.