**The PEOPLE of the State of Colorado,
Plaintiff–Appellee,**

v.

**Jonathan BUTLER, Defendant–Appellant.**

No. 95CA0406.

Colorado Court of Appeals,
Div. II.

Nov. 7, 1996.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Clement P. Engle, Senior Assistant Attorney General, Denver, for Plaintiff–Appellee.

Wolf & Slatkin, P.C., Raymond P. Micklewright, Denver, for Defendant–Appellant.

Opinion by Judge KAPELKE.

Defendant, Jonathan Butler, appeals from a judgment of conviction and the sentence imposed for robbery and three counts of habitual criminal. Defendant contends that the trial court erred in allowing an amendment to the information during trial and in permitting the use at trial of statements defendant made pursuant to a later-withdrawn plea agreement. We affirm but remand with directions.

As a result of events occurring in September 1993, defendant was originally charged with first degree murder, aggravated robbery, and related offenses. Through counsel, he entered into a plea agreement whereby he would plead guilty to second degree murder and aggravated robbery and would cooperate with police by providing a statement regarding the circumstances leading up to the killing.

The court accepted defendant's plea and set the matter for sentencing. Pursuant to the agreement, defendant faced a sentencing range of twenty-six to eighty years. Defendant later gave the prosecution a tape-recorded account of the events leading to the shooting. In his statement, he admitted that a robbery had been planned and that he knew of the plan when he went to the location where the shooting took place.

On the date set for sentencing, defendant moved to withdraw his plea, and the court granted the motion. The prosecution then amended the information, reinstating the first degree murder charge and adding three counts of prior convictions under the habitual criminal statute. Each of the three counts stated that the charged offense was committed "in violation of Colorado Revised Statutes 16–13–101(1) . . . ." Such statement apparently referred to Colo. Sess. Laws 1993, ch. 322, § 16–13–101(1) at 1975, then in effect.

At trial, defendant testified that he had been unaware that either a robbery or a shooting would take place. Over defendant's objection, the prosecution introduced the tape recording of his prior statements to impeach his testimony. Upon further objection that the prior statement was involuntary, the court held an in camera hearing to determine voluntariness.

At the hearing, the prosecution offered the portion of the taped interview in which the prosecutor explained the purpose of the interview, as well as the plea agreement itself. Defendant testified that his statement was involuntary: "I thought I just had to do it because I took a plea bargain. I thought it was part of the plea bargain basically."

At the conclusion of the hearing, the court ruled that the taped statement was voluntary and denied defendant's motion to suppress it. The jury acquitted defendant of murder and aggravated robbery, but found him guilty of the lesser-included offense of robbery.

The trial then proceeded to the habitual criminal phase. After the presentation of evidence, but before the case went to the jury, the prosecution moved to amend the information to change the statutory citation on all three counts to Colo. Sess. Laws 1993, ch. 322, § 16–13–101(2) at 1975–76, characterizing the change as the correction of a typographical error. Defendant objected that the amendment was one of substance, rather than form, because, he asserted, § 16–13–101(2) carried an increased penalty over that prescribed in § 16–13–101(1).

The court deferred ruling on the motion, and no record of the court's ruling appears in the record. In setting forth the judgment of conviction as to the habitual criminal counts, the mittimus refers to § 16–13–101(1). However, the court sentenced defendant to twenty-four years in prison, a sentence consistent with the punishment called for in § 16–13–101(2).

### I.

Defendant contends that the trial court erred in sentencing defendant pursuant to § 16–13–101(2), thereby implicitly granting the prosecution's motion to amend the information. We do not agree.

"An information is sufficient if it advises the defendant of the charges he is facing so he can adequately defend himself and be protected from further prosecution for the same offense." *People v. Albo*, 195 Colo. 102, 106, 575 P.2d 427, 429 (1978). Also, the notice given to defendant of the charges should be sufficient to avoid surprise by the evidence offered at trial. *Cervantes v. People*, 715 P.2d 783 (Colo.1986).

Crim. P. 7(e) provides:

The court may permit an information to be amended as to form or substance at any time prior to trial; the court may permit it to be amended as to form at any time before the verdict or finding if no additional or different offense is charged and if

substantial rights of the defendant are not prejudiced.

■ Ordinarily, the language of the charge is the controlling factor in determining the offense charged, and the statutory reference is considered immaterial and subject to amendment as a matter of form. *People v. Marion*, 182 Colo. 435, 514 P.2d 327 (1973). *See also People v. Stephens*, 689 P.2d 666 (Colo.App.1984) (change of statutory reference to underlying charge in habitual criminal count was matter of form where language of count specified nature of prior conviction); *People v. Ybarra*, 652 P.2d 182 (Colo.App.1982) (amendment of statutory reference was matter of form where language of charge clearly indicated offense).

Here, the prosecution's amendment changed the statutory reference in the information from § 16–13–101(1), as in effect in 1993—which mandates enhanced penalties for felonies when a defendant has already been convicted of two prior felonies—to § 16–13–101(2), which sets forth enhanced penalties for felons convicted of three prior felonies. At the time of defendant's sentencing, § 16–13–101(1) prescribed a penalty of three times the maximum of the presumptive range of a defendant's latest felony, while subsection § 16–13–101(2) called for a sentence of four times that maximum. *Cf.* § 16–13–101, C.R.S. (1996 Cum.Supp.).

■ In evaluating whether a change in an information is a matter of substance or form, we view the information prior to amendment in the context of the surrounding circumstances to determine whether it adequately advises the defendant of the charges. *Cervantes v. People, supra.*

Here, the record shows that, before the prosecution moved to amend the habitual criminal counts, both defendant and his counsel knew that defendant faced charges under § 16–13–101(2), not § 16–13–101(1).

Defense counsel cited § 16–13–101(2) as the applicable habitual criminal statute in a pretrial pleading before the trial court. Further, when asked at trial whether he knew the potential penalty he faced, defendant replied, "I'm facing life—natural life in prison." Both defendant and his counsel appear to have believed that a previous version of § 16–13–101(2), which called for a mandatory life sentence, was still applicable; however, the statute had actually been amended, effective July 1, 1993.

Despite this misapprehension, the record reveals that defendant had actual notice before his trial that he was being charged with having committed three prior felonies under § 16–13–101(2), rather than two felonies under § 16–13–101(1). In view of these surrounding circumstances, and in view of the fact that defendant could not have been surprised by the evidence offered at trial, we conclude that the amendment was a matter of form, not of substance, and no additional or different offense was charged from that defendant understood to be charged. Therefore, we find no error in the trial court's grant of the motion to amend. However, we agree with the prosecution that remand is necessary to correct the statutory reference contained in the mittimus.

## II.

Defendant also contends that the trial court erred in denying his motion to suppress statements he made in the course of a taped interview conducted by the prosecutor and police investigator after the court had accepted defendant's plea, but before defendant had moved to withdraw it. We perceive no error.

■ In ruling on a motion to suppress an inculpatory statement, a trial court must engage in both factfinding and law application. While the trial court's factual determinations are entitled to deference and will not be overturned on appeal if supported by competent evidence, its application of an erroneous legal standard is subject to correction on appeal, as are ultimate conclusions of constitutional law that are unsupported by evidentiary findings. *People v. Gennings*, 808 P.2d 839 (Colo.1991).

### A.

■ Defendant first argues that CRE 410 precludes the use of such statements. We disagree.

CRE 410 provides, in pertinent part:

[E]vidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of statements made in any connection with any of the foregoing pleas or offers, is not admissible in any civil or criminal action, case, or proceeding against the person who made the plea or offer. This rule shall not apply to the introduction of voluntary and reliable statements made in court on the record in connection with any of the foregoing pleas or offers where offered for impeachment purposes. . . .

This court has interpreted the phrase "statements made in connection with" plea bargains to refer to actual offers to make a plea or statements made during plea negotiations with prosecutors. *See People v. Flores,* 902 P.2d 417 (Colo.App.1994) (letter to court from *pro se* defendant offering to plead *nolo contendere* was inadmissible); *People v. Rollins,* 759 P.2d 816 (Colo.App.1988) (statements made to officials in another state concerning plea bargain on unrelated charges were not barred by CRE 410).

██ Once a plea agreement has been negotiated and accepted, however, statements made in compliance with the terms of the agreement are admissible for impeachment purposes if the defendant later breaches the agreement, so long as the statements were voluntary and reliable when made. *People v. McCormick,* 881 P.2d 423 (Colo. App.1994). Likewise, if a defendant subsequently withdraws a guilty plea, statements made in court at a providency hearing are admissible for impeachment purposes, subject to the same verification of voluntariness. *People v. Cole,* 195 Colo. 483, 584 P.2d 71 (1978).

Other courts have extended this rationale to permit admission of out-of-court statements made *after* the defendant had entered into a plea agreement but before withdrawal of the plea. *United States v. Davis,* 617 F.2d 677 (D.C.Cir.1979), *cert. denied sub nom. Gelestino v. United States,* 445 U.S. 967, 100 S.Ct. 1659, 64 L.Ed.2d 244 (1980) (grand jury testimony); *United States v. Stirling,* 571 F.2d 708 (2d Cir.1978), *cert. denied,* 439 U.S. 824, 99 S.Ct. 93, 58 L.Ed.2d 116 (1978) (same).

In *United States v. Davis, supra,* the court focused on the policy goal of allowing a defendant to negotiate with the government without fear that statements made during the negotiations would be used against him. The court emphasized that once a plea agreement has been obtained, this policy concern is satisfied. At that point, a defendant has the option of relying on the plea agreement to protect himself from admission of statements made pursuant to the plea. If he chooses to renounce the plea agreement, he forgoes that evidentiary protection when his trial testimony is inconsistent with those earlier statements. *See People v. Cole, supra; People v. McCormick, supra.*

Here, the plea agreement contained no promises that any statements defendant made to prosecutors after acceptance of his plea would not be used against him if the agreement were later cancelled, the plea withdrawn, and his trial testimony proved to be inconsistent with the statements. In withdrawing his plea, defendant chose to disavow the version of events which he had presented to the court and the prosecution. So long as the earlier statements were offered voluntarily, nothing in CRE 410 bars their introduction for impeachment purposes.

**B.**

██ Defendant also claims that the prosecution failed to establish that his taped statement was voluntary. We perceive no error.

██ The fact that a statement made pursuant to a negotiated plea is given in exchange for a promise of a lesser punishment does not render that statement involuntary. Rather, "it is the use of *coercive* or *otherwise improper* inducements that is of concern." *People v. McCormick, supra,* 881 P.2d at 427 (emphasis in original); *see also People v. Cole, supra; United States v. Davis, supra.*

Here, defendant's only basis for claiming that the taped statement had been given involuntarily was the fact that he was being offered a reduced sentence. No improper or coercive inducements appear from the record. Rather, the portion of the taped inter-

view played at the hearing indicates that defendant was present with counsel and was asked simply to tell the truth regarding certain aspects of the events surrounding the shooting. These facts support the trial court's determination that the taped interview was voluntarily given.

Defendant argues that the trial court misapplied the burden of proof at the hearing on voluntariness by initially requiring him to go forward with evidence that the statement was involuntary. Because defendant did not object to the hearing procedure before the trial court, we apply a plain error standard of review.

When a defendant challenges an inculpatory statement as having been involuntarily made, the prosecution must establish its voluntariness by a preponderance of the evidence. *People v. Gennings, supra.*

Here, the trial court began the hearing by asking defendant to go forward with evidence of involuntariness. However, there is no indication that this order of production amounted to a shift in the burden of proof. Indeed, the court's statements in ruling on the issue made it clear that the court determined that the prosecution had proven voluntariness by at least the required preponderance.

In summary, we conclude that the trial court made the requisite factual findings and applied the correct legal standard in denying defendant's motion to suppress. Defendant's taped statement was properly admitted for impeachment purposes.

The judgment of conviction and sentence are affirmed. The matter is remanded to the trial court for correction of the statutory references contained in the habitual criminal counts of the mittimus to reflect defendant's conviction under § 16–13–101(2).

STERNBERG, C.J., and CRISWELL, J., concur.