The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Nicholas G. GARCIA, Defendant–Appellant.

No. 04CA2240.

Colorado Court of Appeals, Div. III.

May 3, 2007.

Certiorari Denied Oct. 1, 2007.

John W. Suthers, Attorney General, Majid Yazdi, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Andrea R. Manning, Deputy State Public Defender, Denver, CO, for Defendant–Appellant.

Opinion by Judge ROMÁN.

Defendant, Nicholas G. Garcia, appeals the judgment of conviction entered on a jury verdict finding him guilty of sexual assault against a physically helpless victim, § 18–3–402(1)(h), C.R.S.2006. We reverse and remand for a new trial on the sexual assault charge. Defendant does not appeal his conviction for possession of marijuana, § 18–18–406(1), C.R.S.2006, and we do not address it.

According to the People's evidence, defendant, who was eighteen years old at the time, was at his teenage friend's house smoking marijuana and watching a movie. When the friend's mother (the victim) returned home, defendant hid on the balcony because he did not have permission to be at the house. The victim had been out celebrating her birthday and was intoxicated when she arrived home.

After the victim went to bed, she awoke to find defendant having sexual intercourse with her. Initially, she thought defendant was her boyfriend, whom she had seen earlier that night. When she asked how he got in the house, defendant responded that her son let him in. The victim did not recognize the voice as her boyfriend's and was confused about what was happening, but did not tell defendant to stop.

After ejaculating, defendant asked whether he could take a shower, and the victim agreed. When defendant returned to the bedroom, the victim recognized defendant, realized he was not her boyfriend, became upset, and grabbed her gun. Defendant then fled from the victim's home, and the victim called the police.

Defendant was arrested later that night in a nearby cemetery after hiding from the police for several hours. At the time of his arrest, defendant had a police scanner and marijuana in his possession.

After the jury trial, the court sentenced defendant to sex offense intensive supervision probation for twenty years to life. Defendant later admitted to violating his probation. As a result, the court revoked defendant's probation and sentenced him to an indeterminate term of six years to life in the Department of Corrections.

## I. CRE 410.

Defendant contends the trial court erred by admitting statements he made during the course of plea negotiations. We agree and remand for a new trial for sexual assault.

CRE 410 provides in relevant part:

[E]vidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of statements made in any connection with any of the foregoing pleas or offers, is not admissible in any civil or criminal action, case, or proceeding against the person who made the plea or offer. This rule shall not apply to the introduction of voluntary and reliable statements made in court on the record in connection with any of the foregoing pleas or offers where offered for impeachment purposes or in a subsequent prosecution of the declarant for perjury or false statement.

■ The phrase "statements made in any connection with" plea bargains refers to actual offers to make a plea or statements made during plea negotiations with prosecutors. *People v. Butler*, 929 P.2d 36, 40 (Colo.App. 1996) (citing *People v. Flores*, 902 P.2d 417

(Colo.App.1994), and *People v. Rollins*, 759 P.2d 816 (Colo.App.1988)).

■ A trial court has considerable discretion in deciding the admissibility of evidence, and an abuse of that discretion occurs only when its ruling is manifestly arbitrary, unreasonable, or unfair. *People v. Rath*, 44 P.3d 1033, 1043 (Colo.2002); *People v. Elie*, 148 P.3d 359, 362 (Colo.App.2006). A trial court necessarily abuses its discretion when it bases its ruling on an erroneous view of the law. *People v. Wadle*, 97 P.3d 932, 936 (Colo.2004); *People v. Pagan*, 165 P.3d 724, 729 (Colo.App. 2006).

Here, after defendant was arrested, the prosecutor discussed with him and his counsel whether defendant "would be amenable to taking a polygraph to help resolve the case." After discussions with his counsel, defendant agreed to take a polygraph test "in an effort to try to resolve the case through those efforts." At the prosecutor's office, defendant received a *Miranda* advisement and signed a waiver in which he initialed the statement, "I understand that anything I say to the examiner giving the test can be used against me in a court."

At trial, the prosecutor introduced statements defendant made during the polygraph test through the testimony of the polygraph examiner. Defendant objected that they were not admissible because the statements had been made in the course of plea negotiations and were not used at trial to impeach him, but rather were used as substantive evidence of his guilt.

In response to defendant's objection, the prosecutor stated:

Here we don't have a plea agreement. The setup in this case was we offered a polygraph and that was I believe at mutual request, but I think I was the one who initiated those discussions and asked [defense counsel] if his client would be interested in taking such a test. I believe there was discussions [sic] and I was told that was something they were interested and willing to do.

My office never makes offers contingent on results and the specific discussion was something to the effect of we'll see what

happens as a result of that. Then we will discuss what type of plea may or may not be made at that point. Judge, I can tell the Court that there was no plea—well, *there was no offer improved based on those discussions.*

(Emphasis added.)

The trial court found that no offer to plead guilty or nolo contendere was made and that "there was no statement made in connection with any actual offer or statement made during plea negotiations." The court further found that "[a]t best, there may have been a different offer than the one that was already made to [defendant] by [the prosecutor] if the defendant passed a polygraph." Because the court determined that the discussions related to "what the parties were going to discuss depending upon what happened at the polygraph," the court determined that CRE 410 was inapplicable because no plea negotiations had occurred.

In addition, the court found that in the "polygraph advisement and authorization form" defendant "fully acknowledged that he understands that anything he says to the examiner giving the test can be used against him in court."

### A. Plea Negotiations

We first must consider whether defendant's statements were made during plea negotiations. We conclude they were, apply CRE 410 to the facts of this case, and further conclude the statements are inadmissible.

■ Here, the parties do not argue the existence of, and the record does not contain, a plea agreement signed by the parties. Therefore, we agree with the trial court's finding that no plea agreement was reached in this case. However, under CRE 410, "statements made in any connection with" guilty pleas or offers are inadmissible. This rule includes statements made during plea negotiations with prosecutors. *See People v. Butler, supra,* 929 P.2d at 40.

We initially reject the People's argument that defendant never asserted that a plea offer existed. Defense counsel began his objection to the evidence by stating that "the polygraph was conducted … as part of the plea bargain negotiation." Therefore, counsel's subsequent references to "resolving the case" clearly related to plea negotiations.

Defense counsel's characterization of the parties' discussions as plea negotiations is supported by the prosecutor's representation to the court that "there was no offer *improved* based on those discussions" (emphasis added). Contrary to the People's argument on appeal, the prosecutor denied improving an offer based on those discussions, but did not deny that an offer had been made. The trial court recognized the existence of an offer when it found that "there may have been a different offer than the one that was already made to [defendant] by [the prosecutor] if the defendant passed a polygraph."

■ Even if the prosecutor had not made a specific plea offer before the polygraph, we conclude that the polygraph was part of the plea negotiations. The prosecutor stated that the essence of the parties' discussion was, "[W]e'll see what happens as a result of [the polygraph]. Then we will discuss what type of plea may or may not be made at that point." Thus, defendant was expected to take the polygraph before engaging in (further) plea negotiations.

This situation is similar to that in *Gelfand v. People,* 196 Colo. 487, 586 P.2d 1331 (1978) (discussing CRE 410 before it was formally adopted). *There,* the prosecutor had a practice of requiring every defendant seeking deferred sentencing to be interviewed and evaluated by the probation department. During her interview, the *Gelfand* defendant made statements to the probation officer that implicated her in the crime for which she was charged. A plea agreement was never formally concluded, and at trial the probation officer was called as a witness in the prosecution's case-in-chief and testified, over the defendant's objection, to the substance of her incriminating statements. The supreme court held that the trial court erred by allowing the prosecution to use the defendant's statements as substantive proof of guilt.

In considering the policy behind plea agreements, the *Gelfand* court reasoned:

If the effectiveness and integrity of the plea bargaining process are to be pre-

served, admissions or confessions made in connection with plea offers and negotiations must not be admitted as independent substantive evidence of guilt. The defendant should not be penalized for cooperating with the prosecution by engaging in an approved plea negotiation process which is consistent with the objectives of the criminal justice system.

*Gelfand v. People, supra,* 196 Colo. at 491, 586 P.2d at 1334 (footnote omitted).

Because the prosecution required the interview as a precondition to consider the defendant as a candidate for deferred sentencing as part of a plea bargain, the supreme court concluded that "it was palpably unfair to allow the prosecution to use those statements against her for an entirely unintended purpose, to prove her guilt." *Gelfand v. People, supra,* 196 Colo. at 492, 586 P.2d at 1334.

Similarly, in this case the prosecution asked defendant to take a polygraph to see "what type of plea may or may not be made at that point." Defendant agreed to cooperate with the prosecution's request as part of a plea bargain negotiation. Moreover, defendant was aware that if he was not completely honest with the examiner during the polygraph test, he might receive a less favorable plea offer. To penalize defendant for cooperating with the prosecution's request by introducing his statements as substantive proof of guilt is palpably unfair and undermines the public policy of encouraging fair compromises. *See Gelfand v. People, supra,* 196 Colo. at 491–92, 586 P.2d at 1334; *see also People v. Rollins, supra,* 759 P.2d at 818 ("The policy against admitting, at trial, statements made during plea negotiations is designed to encourage the 'unrestrained candor which produces effective plea discussions between the attorney for the government and the attorney for the defendant or the defendant when acting pro se.'" (quoting *United States v. Davidson,* 768 F.2d 1266, 1270 (11th Cir.1985))).

This conclusion is consistent with the modern trend to hold statements made in connection with plea negotiations inadmissible. *See People v. Tanner,* 45 Cal.App.3d 345, 119 Cal.Rptr. 407 (1975); *Richardson v. State,* 706 So.2d 1349 (Fla.1998); *Corthran v. State,* 268 Ga. 443, 491 S.E.2d 66 (1997); *State v. Hatton,* 95 Idaho 856, 522 P.2d 64 (1974); *Jasper v. State,* 871 So.2d 729 (Miss.2004); *State v. Boone,* 66 N.J. 38, 327 A.2d 661 (1974); *see also* 5 Wayne R. LaFave, Jerold H. Israel & Nancy J. King, *Criminal Procedure* § 21.2(h), at 105 (1999).

Therefore, we conclude CRE 410 bars the admission of defendant's statements at trial because the statements were made during plea negotiations. Because the trial court based its evidentiary ruling on an erroneous view of the law, it abused its discretion when it admitted defendant's statements. *See People v. Wadle, supra,* 97 P.3d at 936; *People v. Pagan, supra,* 165 P.3d at 729.

### B. Waiver

■ Nevertheless, the People argue that the statements are admissible because defendant executed a valid waiver. We conclude the People may not assert this argument based on the prosecutor's implied promise that the polygraph and related statements would be subject to CRE 410, on which defendant detrimentally relied.

■ The Due Process Clauses of the United States and Colorado Constitutions provide the bases for enforcing a governmental promise made to an accused in connection with plea negotiations. *People v. Fanger,* 748 P.2d 1332, 1333 (Colo.App.1987); *see Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971); *People v. Macrander,* 756 P.2d 356, 359 (Colo.1988).

■ "When a defendant has reasonably relied to his [or her] detriment on a government promise made during plea bargaining, he [or she] is entitled to enforcement of that promise." *People v. Fanger, supra,* 748 P.2d at 1333. Such a promise need not arise in the context of a "formal 'plea bargain.'" *People v. Fisher,* 657 P.2d 922, 927 (Colo.1983)(quoting *People v. Reagan,* 395 Mich. 306, 235 N.W.2d 581 (1975)).

■ Moreover, even when an accused waives his or her privileges or constitutional rights, the waiver does not diminish the accused's due process right to enforcement of

the governmental promise. *People v. Fisher,* *supra,* 657 P.2d at 929.

■ Finally, if no other appropriate remedy exists that would effectuate a defendant's legitimate expectation, the defendant is entitled to specific performance of a governmental promise. *People v. Fanger, supra,* 748 P.2d at 1334; *see St. James v. People,* 948 P.2d 1028, 1033 (Colo.1997).

Here, as previously discussed, the prosecutor asked defendant whether he would be willing to take a polygraph test to help resolve the case through plea negotiations, and defendant agreed. Before taking the test, defendant signed a general "polygraph advisement and authorization form" stating that he understood that anything he said to the examiner could be used against him in court. The waiver made no reference to CRE 410.

Relying on the prosecutor's proposal that he take a polygraph, defendant signed the waiver, submitted to the examination, and made admissions during the exam. However, instead of reaching a plea agreement as anticipated by the parties, they ultimately went to trial. But for his participation in the requested polygraph test, defendant would not have made the statements that were introduced against him at trial to prove his guilt. Therefore, participating in the polygraph test was detrimental to defendant's position. *See People v. Fanger, supra,* 748 P.2d at 1333. "Because of the State's active participation in encouraging the defendant to waive many of his basic rights, plea negotiations should not be a pitfall or trap to the unwary defendant whenever a plea agreement is not reached or not approved by the court." *People v. Benniefield,* 88 Ill.App.3d 150, 154, 43 Ill.Dec. 455, 410 N.E.2d 455, 458 (1980).

Accordingly, we conclude that defendant is entitled to specific performance of the promise because no other appropriate remedy would effectuate his reasonable expectation that the statements would not be used to his detriment. *See People v. Fanger, supra.* Defendant admitted to having sexual intercourse with the victim but presented consent and mistake-of-fact defenses. The majority of the evidence introduced at trial consisted of statements made by the victim and defendant. Although defendant did not testify at trial, the prosecutor introduced his statements made during his post-arrest interview and polygraph, and focused on the inconsistencies and contradictions between them during closing argument.

Therefore, the People may not argue that the statements are admissible because defendant executed a written waiver.

## C. Harmless Error

■ Because defendant objected to the admission of this evidence at trial, we apply the harmless error standard of review, and we conclude that the admission of the evidence is not harmless.

When a trial court abuses its discretion in admitting certain evidence, reversal is not required if the error was harmless under the circumstances. In regard to evidentiary trial error, harmless error analysis requires an inquiry into whether, when the evidence is viewed as a whole, the contested evidence substantially influenced the verdict or affected the fairness of the trial proceedings. *Masters v. People,* 58 P.3d 979, 1002–03 (Colo.2002).

Such an error will be disregarded if there is no "reasonable probability that the defendant could have been prejudiced by the error." *Raile v. People,* 148 P.3d 126, 134 (Colo.2006). Factors guiding this inquiry include the importance of the evidence to the prosecution's case, the cumulative nature of the evidence, the presence or absence of contradictory or corroborating evidence, the extent of cross-examination permitted, and the overall strength of the prosecution's case. *Raile v. People, supra,* 148 P.3d at 134.

Because we conclude defendant detrimentally relied on the government's implied promise that the polygraph statements would be subject to CRE 410, and as a result he made admissions that the prosecutor used against him, we further conclude a reasonable probability exists that defendant's statements contributed to the jury's guilty verdict for the sexual assault charge. Credibility issues made defendant's potentially contra-

dictory statements important to the prosecution's case. The statements were not cumulative. The prosecution brought them out because they were contradictory, not corroborative. Defendant could rebut them only by waiving his Fifth Amendment right not to testify. And the prosecution did not have a strong case because the properly admitted evidence does not overwhelmingly show guilt. *See Raile v. People, supra.*

## II. Flight Instruction

▉ Because the issue may arise on retrial, we also consider defendant's contention that the trial court erred by instructing the jury concerning his flight. We perceive no reversible error.

▉ The trial court has substantial discretion in formulating the jury instructions so long as they are correct statements of the law and fairly and adequately cover the issues presented. *People v. Gordon,* 160 P.3d 284, —— (Colo.App. 2007).

▉▉ Generally, flight instructions are not favored because they put undue emphasis on only one portion of the evidence. *People v. Larson,* 194 Colo. 338, 342, 572 P.2d 815, 817 (1977); *People v. Cook,* 22 P.3d 947, 952 (Colo.App.2000). However, it is not reversible error to give such an instruction when the "defendant had reason to believe that he had committed a crime, that his identity was known, that his pursuit and apprehension would probably ensue, and that he fled or concealed himself for any length of time to frustrate his apprehension." *People v. Larson, supra,* 194 Colo. at 342, 572 P.2d at 817 (quoting *Robinson v. People,* 114 Colo. 381, 386, 165 P.2d 763, 765 (1946)); *see People v. Cook, supra,* 22 P.3d at 952.

▉ The propriety of the flight instruction depends on the facts of each case. *People v. Cook, supra,* 22 P.3d at 952.

Here, the trial court instructed the jury:

If you find from the evidence beyond a reasonable doubt that the crime of Sexual Assault as charged in the Information was committed by some person, and that immediately after such crime was committed the defendant fled, such flight would be a

circumstance, not sufficient in itself to establish the guilt of the defendant, but a circumstance which you may consider, in connection with all the other facts and circumstances proven at the trial, in determining the question of the guilt or innocence of the defendant. It is for you to determine from the evidence whether such flight was caused by a consciousness of guilt or by some other and innocent motive.

Defendant objected to this instruction because "a good reason other than some type of inference of guilt to leave the scene" existed because the victim "pulled the gun and starting accusing [defendant] of being a rapist and indicating that she was going to shoot and kill him." The trial court overruled defendant's objection because "the jurors are adequately apprised of the situation within that instruction" and "it is for them to determine whether such flight was caused by consciousness of guilt or by some other and innocent motive." The court further found that, if believed, defendant's other and innocent motive to run away would be that he "was concerned he might be shot."

These findings support the conclusion that (1) defendant had reason to believe that he had committed a crime; (2) his identity was known; (3) his pursuit and apprehension would probably ensue; and (4) he should flee and conceal himself to frustrate his apprehension. *See People v. Larson, supra; People v. Cook, supra.*

Nevertheless, defendant argues that the instruction permitted the jury to consider evidence of his flight when considering whether he or "some person" committed the charged offense. However, the instruction given here is taken almost verbatim from the flight instruction given in *People v. Larson,* which the Colorado Supreme Court upheld as not being erroneous. *See People v. Larson, supra,* 194 Colo. at 342, 572 P.2d at 817–18.

Moreover, defendant admitted that he had sexual intercourse with the victim and presented a defense of consent, not mistaken identity. Because identity was not an issue at trial, we perceive no error in the language of the given flight instruction that the jury must find beyond a reasonable doubt that sexual

assault "committed by some person" occurred.

Accordingly, we conclude the trial court did not err by instructing the jury concerning defendant's flight under these circumstances.

The judgment of conviction as to the sexual assault charge is reversed, and the case is remanded for a new trial on that charge.

Judge TAUBMAN and Judge WEBB concur.