LaROSE, Judge.
Garrett Nunes seeks a new trial after a jury convicted him of first-degree felony murder, robbery with a firearm, and second-degree arson. We have jurisdiction over this appeal challenging the convictions and sentences. See Fla. R.App. P. 9.140(b)(1)(A). Mr. Nunes argues that the trial court erred in denying his motions to suppress a statement he made to detectives and an assistant state attorney during plea negotiations. We agree and reverse.[1]
*637 In September 2003, Eric Harris was found dead in the back seat of a burned-out automobile. He died from two gunshot wounds to the neck. Within days, two Hillsborough County detectives developed Mr. Nunes, a seventeen-year-old, as a suspect. The detectives visited the Nunes’s home, where they questioned him for several hours. Mr. Nunes denied any knowledge of the incident.
The detectives told Mr. Nunes and his father, Mitch, that they would treat fairly the first person to come forward with helpful information. Mitch Nunes contacted an attorney, who subsequently learned that the detectives had evidence linking Mr. Nunes to the crime. They asked counsel if Mr. Nunes would take a polygraph test. After considering the matter for several days and consulting with -the family, counsel concluded, and recommended to the Nunes family, that Mr. Nunes should cooperate with law enforcement. Mr. Nunes, his counsel, and his father expected that such cooperation would garner favorable treatment.
Mr. Nunes, along with counsel and his father, went to the State Attorney’s Office in Tampa. There, they met with an assistant state attorney and the two detectives. Counsel met privately with the law enforcement officials and proffered the information known to Mr. Nunes. No plea deal was expected at this time. From the Nunes’s side of the table, however, there can be little question that they viewed this meeting as the beginning of a plea negotiation process. Prior to taking a statement from Mr. Nunes, the assistant state attorney made it clear that there was no plea offer on the table. He did describe the process by which the State would decide to offer a plea deal. He stressed that before the State could offer any plea, it would have to verify the accuracy of Mr. Nunes’s information and submit the case for review by the State Attorney’s homicide committee. With that warning, Mr. Nunes gave a lengthy recorded statement in which he implicated himself in the death of Mr. Harris. Mr. Nunes was not arrested at that time. He was allowed to go home with his father. He also agreed to cooperate further with the detectives.
Over the next several days, the detectives used the Nunes’s home as a base for wiretaps and other surveillance. Mr. Nunes accompanied them to the crime scene and was “wired”- in an effort to gain more information. This investigation led to the arrest of Pablo Sandoval, the person who actually shot Mr. Harris. Notwithstanding his statement and subsequent cooperation, the State charged Mr. Nunes as an adult with first-degree murder, armed robbery, and arson.[2] The State offered and Mr. Nunes rejected a thirty-year prison term for a reduced charge of second-degree murder.
Prior to trial, Mr. Nunes filed two motions to suppress the statement he gave at the State Attorney’s Office. In part, Mr. Nunes argued that the statement was made during plea negotiations. After extensive evidentiary hearings, the trial court denied the motions. The statement was a feature of the trial, and the jury convicted Mr. Nunes. The trial court sentenced him to concurrent sentences of life in prison on the felony murder and armed robbery counts and thirty years in prison for arson.
Evidence of statements made during plea negotiations is not admissible in *638 evidence. Florida Rule of Criminal Procedure 3.172(f) provides:
Evidence. Except as otherwise provided in this rule, evidence of an offer or a plea of guilty or nolo contendere, later withdrawn, or of statements made in connection therewith, is not admissible in any civil or criminal proceeding against the person who made the plea or offer.
Rule 3.172(i) restates section 90.410, Florida Statutes (2006).[3] Rule 3.172(f) is derived from an analogous federal rule, adopted to promote plea bargaining by allowing a defendant to negotiate without waiving fifth amendment protection. See Fed.R.Crim.P. 11(f); Fed.R.Evid. 410; Groover v. State, 458 So.2d 226, 228 (Fla.1984). “ ‘The most significant factor in the rule’s adoption was the need for free and open discussion between the prosecution and the defense during attempts to reach a compromise.’ ” (quoting United States v. Davis, 617 F.2d 677, 683 (D.C.Cir.1979)).
Florida courts construe the exclusionary provisions of Rule 3.172(f) narrowly. See id. We have “adopt[ed] the two-tiered analysis from United States v. Robertson, 582 F.2d 1356 (5th Cir.1978), for determining whether a statement falls within the ambit of the exclusion.” Id. (citing Anderson v. State, 420 So.2d 574, 577 (Fla.1982)). The trial court must determine “first, whether the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion, and, second, whether the accused’s expectation was reasonable given the totality of the objective circumstances.” Robertson, 582 F.2d at 1366; see also Richardson v. State, 706 So.2d 1349 (Fla.1998) (applying Robertson test and reversing and remanding for a new trial where confession was inadmissible because it was given to police officer during plea negotiations). Our thorough review of the suppression hearing transcripts leaves no doubt that Mr. Nunes gave his statement with a subjective expectation to negotiate a plea. Further, the record amply supports the reasonableness of Mr. Nunes’s expectation under all the circumstances. Although no plea offer was made at the time of the statement, the State repeatedly expressed to Mr. Nunes the process that would be followed to decide whether a plea offer would be made. Amd, the State, in fact, did offer a plea deal later in the course of the case. Objectively, Mr. Nunes reasonably expected that his statement was the beginning of a plea bargaining process.
As explained in Richardson, neither rule 3.172(i)[4] nor section 90.410 require that a plea bargain be completed or that a written agreement be signed before negotiations can be excluded from evidence. 706 So.2d at 1355-56. Richardson is cited with approval in People v. Garcia, 169 P.3d 223, 228 (Colo.Ct.App.), cert. denied, No. 07SC521, 2007 WL 2822534 (Colo.2007), where the prosecutor asked the defendant to take a polygraph test to help resolve the case. The defendant took the test and signed a waiver that the test could be used against him in court. At trial, he objected to the use of his statements. The prosecutor responded that no plea agreement existed. There were “discussions ... they were interested and willing to do.” Id. at 226. The prosecutor further stated:
*639 My office never makes offers contingent on results and the specific discussion was something to the effect of we’ll see what happens as a result of that. Then we will discuss what type of plea may or may not be made at that point. Judge, I can tell the Court that there was no plea — well, there was no offer improved based on those discussions.
Id. at 226-27.
Garcia concluded that the defendant was expected to take the polygraph test before engaging in plea negotiations. Id. at 227. Thus, the polygraph test was part of the plea negotiations. Id. Finding the error was not harmless, the appeals court reversed and remanded the case for a new trial. Id. at 230-31; see also State v. Guzman, 979 So.2d 1144 (Fla. 3d DCA 2008) (affirming trial court’s order suppressing statements during polygraph examination conducted as a condition of ongoing plea negotiations).[5]
Here, the trial court denied Mr. Nunes’s motions to suppress based on an erroneous view of the law. On the record before us, Mr. Nunes’s statements were given for purposes of what can be viewed only as plea negotiations. Finally, we cannot conclude that the improper admission of Mr. Nunes’s statement constituted harmless error. See Richardson, 706 So.2d at 1358.
Reversed and remanded for a new trial.
WHATLEY and DAVIS, JJ., Concur.

. Because Mr. Nunes is entitled to a new trial, we decline to address his arguments *637 concerning the denial of a requested independent act jury instruction and alleged eviden-tiary errors.

. The trial court severed the trials of Mr. Nunes and Mr. Sandoval. Mr. Sandoval’s convictions are on appeal in case number 2D07-1639.

. Offer to plead guilty; nolo contendere; withdrawn pleas of guilty. — Evidence of a plea of guilty, later withdrawn; a plea of nolo contendere; or an offer to plead guilty or nolo contendere to the crime charged or any other crime is inadmissible in any civil or criminal proceeding. Evidence of statements made in connection with any of the pleas or offers is inadmissible, except when such statements are offered in a prosecution under chapter 837 [perjury],

. Formerly rule 3.172(h).

. Similarly, offers to plead in exchange for certain concessions are inadmissible under rule 3.172(i) and section 90.410. See McCray v. State, 760 So.2d 988, 988-89 (Fla. 2d DCA 2000) (reversing and remanding where defendant's letter to State indicating that he would plead guilty in exchange for concessions was erroneously admitted); Debiasio v. State, 789 So.2d 1061, 1063 (Fla. 4th DCA 2001) (concluding that defendant's letter to state attorney, in which he offered to plead guilty, was inadmissible); Russell v. State, 614 So.2d 605, 612 (Fla. 1st DCA 1993) (holding that pretrial letter to prosecutor, offering to plead guilty in return for sentencing concession, was inadmissible).