23CA0866 Peo v Shead 01-29-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0866
Douglas County District Court No. 22CR10
Honorable Patricia D. Herron, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Ahmarion Kaliel Shead,

Defendant-Appellant.

---

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE SULLIVAN
Fox and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 29, 2026

---

Philip J. Weiser, Attorney General, Josiah Beamish, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Shann Jeffery, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Ahmarion Kaliel Shead, appeals the judgment of conviction entered on a jury verdict finding him guilty of aggravated robbery involving a simulated deadly weapon, two counts of menacing, and first degree aggravated motor vehicle theft. We reverse and remand for a new trial.

I.     Background

¶ 2     In December 2021, Noah Reed listed his van for sale on two online marketplaces. He brought a friend along for a test drive with a potential buyer, whom he and his friend later identified as Shead. Reed and his friend testified that during the test drive, the potential buyer stopped the van, pointed what appeared to be a gun at them, and told them to get out of the car.

¶ 3     As relevant to this appeal, the prosecution charged Shead with one count of aggravated robbery involving a simulated deadly weapon, two counts of menacing, one count of first degree aggravated motor vehicle theft, and one crime of violence sentence enhancer.

¶ 4     Shead retained private counsel, William O'Donnell, who attempted to arrange an interview with the assigned detective as well as detectives in other counties where Shead had other open

cases. The other detectives didn't join, however, so the March 2022 interview included only Shead, O'Donnell, and the detective in this case. During the videotaped interview, Shead confessed to committing almost all the elements of the charged offenses.

¶ 5 Soon after the interview, O'Donnell stopped practicing criminal law and withdrew from the case. The public defender's office then began representing Shead. In August 2022, the prosecution offered Shead a plea deal, but Shead didn't accept the offer. The case proceeded to a jury trial.

¶ 6 During voir dire, multiple prospective jurors said they would trust the testimony of law enforcement officers over testimony by other witnesses. Two such prospective jurors, J.H. and K.B., ended up sitting on the jury.

¶ 7 The jury found Shead guilty of the charges identified above. The district court sentenced Shead to eighteen years in the custody of the Department of Corrections.

¶ 8 On appeal, Shead contends that (1) the district court violated his constitutional right to a fair trial because two jurors expressed pro-law enforcement bias; (2) his videotaped confession was inadmissible under CRE 410 because it occurred during plea

negotiations; and (3) the district court plainly erred by admitting his videotaped confession because his *Miranda* waiver wasn't knowing, intelligent, and voluntary.

¶ 9    We agree with Shead's first contention as to one of the challenged jurors, J.H., and therefore reverse Shead's convictions. Because it's likely to arise on remand, we also address and reject Shead's second contention. But we decline to reach his third contention for the first time on appeal.

## II.    Juror Bias

### A.    Additional Background

¶ 10    On his juror questionnaire, J.H. wrote "[d]epends" when asked whether there was any reason why he couldn't be a fair and impartial juror. J.H. explained that he was "pro-law enforcement, military, and for following established laws." J.H. also wrote in his questionnaire that his brother-in-law worked for a police department.

¶ 11    Consistent with his questionnaire, J.H. expressed partiality for law enforcement several times during voir dire, albeit with some equivocation. In response to the prosecutor's question about putting aside preconceived notions, J.H. said that would be "a

challenge" because he puts "a lot of faith" in institutions and law enforcement officers. But J.H. added, "I think I could put that behind me."

¶ 12      J.H. also agreed with the prosecutor, at least initially, that law enforcement officers sometimes make mistakes and that a juror shouldn't automatically believe an officer over other witnesses simply because they are a member of law enforcement. In later responses to defense counsel's questions, however, J.H. said he would give a law enforcement officer's testimony more credibility over another lay witness, even before hearing any testimony or knowing anything about the officer's training or experience. The following exchange is illustrative:

> [DEFENSE COUNSEL]: . . . Taking away those hypotheticals just knowing what you know, do you believe that you will give law enforcement a leg up in their testimony just because they're law enforcement and not taking anything else into account based on kind of your beliefs and what you've said?
>
> . . . .
>
> [PROSPECTIVE JUROR J.H.]: . . . If you're talking somebody random that I don't know saying something different than testimony from a uniformed police officer which does line up with the rest of the facts, I'll be honest I

would probably give — because I do think we put special trust in our uniformed officers.

I would have to give that more credibility than somebody I have no idea because the only difference I would have if that's what you're saying is the fact that he has sworn an oath —

[DEFENSE COUNSEL]: Right.

[PROSPECTIVE JUROR J.H.]: — and this person has no allegiance except for the defendant.

[DEFENSE COUNSEL]: Let me ask it this way. Just without hearing the testimony, without hearing training and experience, right, just the fact that they've sworn that oath, just the fact that they're law enforcement, do they start higher or maybe with more credibility than just your average lay witness?

[PROSPECTIVE JUROR J.H.]: They do for me, yes.

¶ 13    Defense counsel challenged J.H., among others, for cause based on "law enforcement bias."  The district court then read the pattern jury instruction on credibility, COLJI-Crim. E:05 (2024), and asked each of the challenged prospective jurors whether the instruction "change[d] anything" about how they would assess a law enforcement officer's credibility.  J.H. responded that, while he would consider the same credibility factors for all witnesses, law enforcement officers have "inherent" credibility in his view based on

5

the "special trust" that society places in them. J.H. added, "[J]ust being a hundred percent honest with the [c]ourt, I would give law enforcement a small leg up just by the nature of trust like we discussed, but I agree that [in] each individual case we should look at all those factors."

¶ 14 The prosecutor tried to rehabilitate J.H., asking him directly whether he would follow the court's credibility instruction. J.H. answered that, although he would look at "all factors for all testimony," he was nonetheless "more apt to put a little more trust in an officer of the law than . . . a random person." J.H. elaborated that most people who go into law enforcement hold "lofty ideals that inherently attract a degree of trust from me just because of the sacrifice they make on a personal level."

¶ 15 When the prosecutor tried again to rehabilitate J.H. by asking through a leading question whether he would follow the court's credibility instruction, J.H. responded, "Absolutely."

¶ 16 Finally, defense counsel asked J.H. whether a law enforcement officer starts with a "leg up." J.H. answered, "I would weigh everything and when weighing everything, [law enforcement] will get increased credibility as a baseline."

¶ 17　Defense counsel again challenged J.H. for cause, arguing that J.H. said he would give law enforcement a "leg up out of the gate without hearing anything."  The prosecution opposed the challenge, saying no "leg up standard" exists and that J.H. acknowledged that he would adhere to the court's credibility instruction.  The district court agreed with the prosecution and denied the challenge for cause but didn't make any findings reconciling J.H.'s conflicting statements.

¶ 18　Defense counsel exercised peremptory challenges to strike other prospective jurors who made statements favoring law enforcement, but counsel exhausted her peremptory challenges before she could strike J.H.  As a result, J.H. served on the jury.

B.　Applicable Law and Standard of Review

¶ 19　Both the United States and Colorado Constitutions guarantee a criminal defendant the right to trial by a fair and impartial jury. U.S. Const. amend. VI; Colo. Const. art. II, § 16; *People v. Garcia*, 2018 COA 180, ¶ 17.  The right to challenge a juror for cause is an integral part of a fair trial.  *Carrillo v. People*, 974 P.2d 478, 486 (Colo. 1999).  "To ensure a defendant's right to a fair trial with an impartial jury, a trial court must excuse biased or prejudiced

7

persons from the jury." *People v. Young*, 16 P.3d 821, 824 (Colo. 2001) (citing *Nailor v. People*, 612 P.2d 79, 80 (Colo. 1980)).

¶ 20    A trial court must sustain a challenge for cause, for example, when "[t]he existence of a state of mind in the juror evince[s] enmity or bias toward the defendant or the state." § 16-10-103(1)(j), C.R.S. 2025; *see also* Crim. P. 24(b)(1)(X) (similar). When "a potential juror's statements compel the inference that [they] cannot decide crucial issues fairly, a challenge for cause must be granted in the absence of rehabilitative questioning or other counter-balancing information." *People v. Merrow*, 181 P.3d 319, 321 (Colo. App. 2007); *accord People v. Prator*, 833 P.2d 819, 820-21 (Colo. App. 1992) (trial court erred by denying challenge for cause to a prospective juror who conveyed a "clear expression of bias in favor of law enforcement witnesses"), *aff'd*, 856 P.2d 837 (Colo. 1993). A declaration by the prospective juror that they will not follow the court's instructions isn't a prerequisite for disqualification. *People v. Gulyas*, 2022 COA 34, ¶ 26.

¶ 21    We review a trial court's denial of a challenge for cause for an abuse of discretion. *People v. Blassingame*, 2021 COA 11, ¶ 9. "A court abuses its discretion when it issues a ruling that is manifestly

arbitrary, unreasonable, or unfair, or when it misconstrues or misapplies the law." *Id.* In determining whether the trial court abused its discretion, we examine the entire voir dire of the prospective juror. *Id.* (citing *People v. Wilson,* 114 P.3d 19, 22 (Colo. App. 2004)). If a biased juror sits on the jury, structural error occurs and we must reverse the defendant's convictions. *People v. Abu-Nantambu-El,* 2019 CO 106, ¶ 2.

## C. Analysis

¶ 22 We conclude that the district court abused its discretion by denying Shead's challenge for cause to J.H. During voir dire, J.H. candidly admitted that he would give a law enforcement officer more credibility than other witnesses, even before hearing any testimony, simply because they are a member of law enforcement. Based on J.H.'s statements, the court should have granted Shead's challenge for cause. *See Gulyas,* ¶ 24.

¶ 23 Although the court and the prosecution tried to rehabilitate J.H. by asking whether he would follow the court's credibility instruction, their attempts proved unsuccessful. J.H. continued to say that he would give law enforcement officers a "leg up," view them with "inherent" credibility, and place "more trust" in them

compared to other witnesses. *See Blassingame*, ¶¶ 21-22. If anything, J.H. upped the ante after his attempted rehabilitation by saying he would extend law enforcement officers "increased credibility as a baseline." *See id.* at ¶¶ 22, 26 (concluding trial court erred by denying challenge for cause, in part because the prospective juror's equivocal statements reappeared after the prosecutor's attempted rehabilitation).

¶ 24　　In addition, J.H. didn't need to "unequivocally" state his partiality for one side to be deemed unfit to serve on the jury. *Id.* at ¶ 26. To the contrary, it's enough that the prospective juror provided "'uncertain answers' and was never sufficiently rehabilitated." *Gulyas*, ¶ 23 (quoting *Blassingame*, ¶ 27). Here, J.H.'s repeated, unrehabilitated remarks that he would favor law enforcement officers before hearing any testimony left little doubt that he would struggle to decide crucial issues fairly. *Blassingame*, ¶ 28.

¶ 25　　True, J.H. made some limited statements suggesting that he would follow the court's credibility instruction. But those remarks were either equivocal, inconsistent with his statements favoring law enforcement, or in response to the prosecutor's leading questions.

10

*See id.* at ¶ 22 n.2 (answers to leading questions during voir dire are viewed with suspicion); *People v. Luman*, 994 P.2d 432, 436 (Colo. App. 1999) (reversing convictions because "there was no rehabilitation . . . containing unequivocal statements by the juror of [their] commitment to fairness that might support the trial court's conclusion"). When defense counsel followed up with open-ended questions, J.H. again emphasized that a law enforcement officer would start with increased credibility as a "baseline." *See Blassingame*, ¶¶ 20, 26.

¶ 26   We recognize that the district court is generally best positioned to decide whether a prospective juror can render a fair and impartial verdict based on its unique ability to observe the potential juror's demeanor and credibility. *Id.* at ¶ 23. But here, the district court made no findings or credibility determinations resolving J.H.'s self-contradictory statements. *See People v. Hancock*, 220 P.3d 1015, 1019-20 (Colo. App. 2009) (trial court erred by denying challenge for cause, in part because the court didn't "explain on the record why prospective juror N.'s clear statements of doubt in her willingness or ability to follow the law should be disregarded in favor of an earlier general and seemingly inconsistent statement"),

*overruled on other grounds by*, *People v. Novotny*, 2014 CO 18.
Absent such findings, J.H.'s final statement — that he would afford
law enforcement officers heightened credibility as a "baseline" —
leaves us with considerable uncertainty about whether he would
follow the court's credibility instruction or decide crucial issues
impartially. *Blassingame*, ¶ 28; *see also People v. Marciano*, 2014
COA 92M-2, ¶ 17 ("While we defer to the trial court's unique
perspective and ability to assess credibility and demeanor, absent
any findings regarding credibility or demeanor we are left with a
cold record devoid of any support for the trial court's conclusions.").

¶ 27    The People's arguments to the contrary don't convince us
otherwise. The People argue that Shead could have removed J.H.
with a peremptory challenge but "chose" otherwise. But Shead had
already exhausted his peremptory challenges on other prospective
jurors. And a defendant need not cure a trial court's erroneous
denial of a challenge for cause by using a peremptory challenge to
strike the objectionable prospective juror to preserve a claim that a
biased juror deprived the defendant of their right to a fair trial. *See
Garcia*, ¶¶ 9-11.

12

¶ 28    The People also rely on decisions in which reviewing courts upheld denials of challenges for cause to prospective jurors who, like J.H., gave self-contradictory answers during voir dire. We conclude that the People's cited cases are distinguishable because either (1) the challenged prospective juror in those cases indicated upon further questioning that they would follow the trial court's instructions and could be fair and impartial to both sides, *see, e.g.*, *People v. Samson*, 2012 COA 167, ¶¶ 18, 22; *People v. Vigil*, 718 P.2d 496, 501 (Colo. 1986); or (2) the trial court made findings that the challenged prospective juror could be fair (or, at a minimum, didn't harbor prejudice or bias) notwithstanding their inconsistent statements, *see, e.g.*, *Garcia*, ¶ 21; *People v. Sandoval*, 733 P.2d 319, 322 (Colo. 1987). Neither occurred here.

¶ 29    Accordingly, because the district court abused its discretion by denying Shead's challenge for cause to J.H., we reverse Shead's convictions and remand the case for a new trial. Given our disposition, we need not reach Shead's argument that a second juror, K.B., also expressed impermissible bias during voir dire.

### III.  Admissibility of Confession

¶ 30    Because it's likely to arise on remand, we also address Shead's contention that the district court erred by admitting his videotaped confession.  According to Shead, the court violated CRE 410, section 16-7-303, C.R.S. 2025, and Crim. P. 11(f)(6) because he confessed to the charged offenses during plea negotiations.  The People counter that the district court properly admitted the confession because the prosecutor didn't consent to be bound by the alleged plea discussions at Shead's interview.  We conclude the district court acted within its discretion when admitting Shead's confession.

### A.    Applicable Law and Standard of Review

¶ 31    CRE 410 limits evidence related to the plea bargaining process:

> [E]vidence of a plea of guilty, later withdrawn, or a plea of *nolo contendere*, or of an offer to plead guilty or *nolo contendere* to the crime charged or any other crime, or of statements made in any connection with any of the foregoing pleas or offers, is not admissible in any civil or criminal action, case, or proceeding against the person who made the plea or offer.

14

Section 16-7-303 and Crim. P. 11(f)(6) contain similar limitations, rendering inadmissible "the fact that the defendant or his defense counsel and the district attorney engaged in plea discussions or made a plea agreement."

¶ 32    But this principle doesn't extend to all discussions between a suspect and law enforcement agents. *People v. Rollins*, 759 P.2d 816, 818 (Colo. App. 1988). Rather, it "applies only to discussions between defense counsel, or pro se litigants, and prosecuting attorneys who have specific authority to bind the government to a plea-agreement later consummated in court." *Id.* While the prosecuting attorney need not be present for statements to be considered part of plea negotiations, their "knowledge and consent to be bound by such discussions is an essential prerequisite." *Id.*

¶ 33    As before, we review a trial court's rulings on the admissibility of evidence for an abuse of discretion. *People v. Garcia*, 169 P.3d 223, 226 (Colo. App. 2007).

## B.    Analysis

¶ 34    We perceive no abuse of discretion in the district court's decision admitting Shead's confession. Based on testimony at a pretrial motions hearing, the court found that the parties hadn't yet

commenced plea negotiations when Shead's interview with the detective took place.

¶ 35    The prosecution presented ample evidence at the motions hearing to support the court's findings.  The prosecutor testified that (1) O'Donnell, not the prosecution, requested the interview; (2) she didn't authorize the interviewing detective to make any promises or engage in plea discussions; (3) she hadn't reviewed the case to determine whether a plea bargain was appropriate, so plea negotiations hadn't yet commenced; (4) she didn't agree to a "quid pro quo or anything" in exchange for Shead sitting for the interview; and (5) the interview played no role in the prosecution's decision on whether, or when, to extend a plea offer.

¶ 36    Based on this testimony and the court's findings, the prosecution didn't "consent to be bound" by any interview discussions.  *Rollins*, 759 P.2d at 818.

¶ 37    *Garcia,* relied on by Shead, is distinguishable.  169 P.3d at 227.  In that case, the defendant "was expected to take [a] polygraph before engaging in (further) plea negotiations," leading a division of this court to conclude that the polygraph was "part of the plea negotiations."  *Id.*  By contrast, the prosecutor here testified

16

that the later plea offer wasn't conditioned on Shead's participation in the interview.

¶ 38    To the extent Shead points to evidence in the record that he believes shows the parties were in the midst of negotiating a plea, we may not reweigh the evidence to reach a result contrary to the one the district court reached. *People v. Liebler*, 2022 COA 21, ¶ 20 (appellate courts don't reweigh evidence, assess credibility, or resolve inconsistencies or contradictions in testimony).

¶ 39    Accordingly, the district court didn't abuse its discretion when admitting Shead's confession.

## IV.    Disposition

¶ 40    We reverse Shead's convictions and remand the case for a new trial.

JUDGE FOX and JUDGE KUHN concur.